ANDREW A. LOVE v. JOHN W. BERRY, ADM'R AND OTHERS.

A purchaser of land, at an administrator's sale, if the legal title were in the intestate, is not affected by any secret trust between the intestate and a third person, of which he had no notice, although the administrator may have had notice.

The assignment of a land certificate, accompanied by a declaration of trust in the assignee, of the same date, and recorded at the same time, but in a county different from the one in which the land is located, does not affect a purchaser at an administrator's sale with notice of the trust.

APPEAL from Ellis. Tried below before the Hon. Ed. H. Vontress.

The facts are stated in the opinion of the court.

*W. D. Dillon,* for appellant. Lewis Godard was the trustee of Andrew A. Love, and could not, without an express power for that purpose, alter the nature of the trust property, by converting the land into money, unless under particular circumstances, and evidently for the benefit of the trust estate. Nor could the trustee prejudice the *cestui que trust,* by doing what his trust did not authorize. (1 Saund. on Uses and Trusts, 365, §§ 8, 9.) John W. Berry, as administrator of the estate of Lewis Godard, deceased, occupied the same position towards Love that Godard did. The administrator sells only such title as the estate has ; there is no warranty, either expressed or implied. The maxim *caveat emptor* applies. (Basset v. Nos-

worthy, Lead. Cases in Equity, vol. 2, part 1. p. 76.) It has been held on this point, that the title of a purchaser under a judgment, cannot be better than that of the party through whom he claims, and that, whether he purchase with or without notice; and it has been decided on this ground, and on the general principle, that the property of one man should not be taken to pay the debt of another; and that an equitable interest in land will follow the legal title, into the hands of a purchaser under an execution. This is the law of North Carolina, and the law was held the same way in South Carolina: (Bank of South Carolina v. Campbell, 2 Rich. Eq. Rep. 179; Williams v. Holingsworth, 1 Strob. Eq. Rep. 103; Crayton v. Munger, 9 Tex. Rep. 285.)

There is no principle which can sanction and give legal effect to a fraud, by which an innocent person has been deceived to his prejudice, by whomsoever, and in whatsoever capacity committed. There is no person, or class of persons, capable of contracting at all, who are at liberty to perpetrate frauds upon others, to their injury, with impunity. Even infants and married women, who for most purposes are incapable of contractting so as to bind themselves, are not exempt from the obligation to observe, in their dealings with others, the dictates of natural justice and common honesty. An administrator cannot create a charge upon the estate he represents, by his illegal or fraudulent acts; nor can the estate derive benefit, or obtain a legal advantage, as against innocent third persons, by means of such acts. The estate can neither be charged, nor can it charge others, by means of fraudulent acts of its legal representatives.

That an administrator, in his representative capacity, cannot derive benefit from frauds committed by him in that or any other capacity, is a proposition too plain to require illustration. It is, says Judge Story, in his Commentaries on Equity Jurisprudence, manifestly a result of natural justice, that a party ought not to be permitted to avail himself of any agreement, deed, or other instrument procured by his own fraud, or by his own violation of legal duty or public policy, to the prejudice of

an innocent party.   It would, indeed, be a monstrous doctrine to hold, that estates may speculate upon the fraudulent acts of their legal representatives. (2 Story's Eq. Jur. p. 695.)   The transfer of the certificate, by Love to Godard, and the execution of the defeasance by Godard to Love, were done at the same sitting, in the presence of the same witnesses, and both were recorded in the same. county, and must, we presume, be taken as parts of the same contract, and consequently inseparable. On this subject, see the case of Wallis v. Beauchamp, 15 Tex. Rep. 303.   Both parties seemed to think this was the proper county to record in, and we are inclined to believe they were right.   The certificate was unlocated, and it was impossible for Love, the plaintiff and appellant, to know where it would be located, so as to anticipate the county.

If we are correct, the argument of the appellees, Brewer and Ferris, must fall to the ground, for a record in the proper county would be notice to all the world; and as regards the defendant, Berry, the administrator of L. Godard, he knew all about the whole matter.   The witness, Patton, told him all about it : he was not acting honestly, innocently, and justly, as the representative of Godard.   After the land was located, Godard could not have sold the same, and made a good title, because he would have exceeded the trust reposed in him, in selling land for which he had an outstanding obligation, and which he only held in trust for Love ; and the administrator, Berry, could do no more than his intestate.   Therefore, he exceeded the powers of his trust, after being fully informed relative to the same, to the great prejudice of the *cestui que trust*, Love ; and in fact, he practiced a fraud, not only upon Love, but upon the defendants, Brewer and Ferris ; for, as we have shown, he, Berry, had notice of Love's claim.   And where a party has knowlege of the facts, he has notice of the legal consequences resulting from those facts.  (2 Starkie on Ev. note *a*, p. 730.)   We would also direct the attention of the court to the case of Hodges v. Johnson, 15 Tex. Rep. 570, which, in some of its leading features, is analogous to the

present case. If the maxim *caveat emptor* prevails, Godard could not legally have sold more than one third of the land in question; and Berry, the administrator of his estate, could do no more than his intestate could have done; and, in the language of this court, he gave no warranty, he simply sold and conveyed the interest of his intestate, which at most was but one third of it.

*J. W. Ferris*, for appellee.    1st.  The defendants, Brewer and Ferris, are *bonâ fide* purchasers, for value, and without notice of the plaintiff's equity.  The transfer from Love to Godard, passed the legal title of the certificate to him, and he held the same in trust for the purposes mentioned in the receipt held by plaintiff; but, as to third persons, who had no notice of the trust, Godard was the owner, in his own right.  Such third persons could deal with him as the owner.  Wetherhed v. Boon, 17 Tex. Rep. 143, is precisely in point.  If the defendant, Brewer, had purchased of Godard in his lifetime, without notice of the trust, his title would have been protected beyond doubt. Is he in a worse condition, having purchased from the legal representative, and under a decree of the court ?   We think not.

It will be said, that *caveat emptor* applies to all probate sales.   And what is meant by this law maxim ?   Does it convey to our minds any well defined rule of law ?   Does it define the rights of the purchaser ?   The purchaser at a probate sale must beware, or take care ; for it is a rule of law, that he takes only such title as the estate has.   True : but he takes all the title the estate has, as much as if he had purchased from the deceased in his lifetime.   In this case, Godard had the legal title ; Brewer purchased this legal title at the sale ; and he is not affected by the obligation to reconvey, for it was a personal obligation, of which he had no notice.

In North and South Carolina, it has been held, that an equity will follow the legal title into the hands of the purchaser at a judicial sale.   But it is evident, that such a rule would seriously impair such sales.   It would place them upon a more unfavor-

able footing, than other sales; and would subject creditors, debtors and heirs, to serious loss. The weight of American authority is the other way. It is held, that "a purchaser at a "judicial sale, will take the land, discharged of every claim or "title, whether arising under an unregistered deed, or a mere "equity, of which he had no notice, at the time of the purchase, "and which would be invalid as against an ordinary purchaser." (Equity Leading Cases, vol. 2, part 1, notes p. 76, and cases cited; Jackson v. Town, 4 Cow. Rep. 599; Jackson v. Post, 9 Ibid. 120; 15 Wend. Rep. 588; Jackson v. Chamberlin, 8 Ibid. 620; Waldo v. Russel, 5 Missouri Rep. 387; Den v. Richman, 1 Green's Rep. 43; Scribner v. Lockwood, 9 Ohio Rep. 184; The Ohio Life Ins. Co. v. Ledyard, 8 Alabama Rep. 866; Orth v. Jennings, 8 Blackf. Rep. 420; Heister v. Fortner, 2 Binney's Rep. 40; Mann's Appeal, 1 Barr's Rep. 24.)

It is believed that our own State has gone far to place judicial sales upon an equal footing with others. (Poor v. Boyce, 12 Tex. Rep. 440; Alexander v. Maverick, 18 Ibid. 179.) Innocent purchasers at probate sales, have been protected; and it is held, that they are not affected by any fraud, to which they are not parties, or of which they had no notice. (Barnes v. Hardeman, 15 Tex. Rep. 366; George v. Watson, 19 Ibid. 354.) So, in this case, if Berry, the administrator of Godard's estate, had notice, or was a party to any fraud, it cannot affect Brewer and Ferris, who are purchasers without notice.

2d. There is no evidence showing that the defendants, Brewer and Ferris, had notice of plaintiff's equity, or that there was sufficient intimation to put them on inquiry. The conversation of Patton, at one edge of the crowd attending the sale, could not affect all with notice. As the witness (Hawkins) says, no one forbid the sale; he was present, and heard nothing said about Love's claim; the administrator proclaimed the title good, and gave a history of the title; he was in the assembly of bidders, and was a bidder himself. Brewer purchased without notice, and Ferris afterwards became a purchaser of an undivided half; and both paid the purchase money, before the

plaintiff made known his claim. The obligation, held by Love, was recorded in the county of Kaufman, and not in Ellis county, where the land is situated. The purchasers therefore are not affected with constructive notice.

3d. The plaintiff had slept upon his rights, if any he had, for five years before the institution of his suit. To permit him now to recover the property, after a legal sale to innocent purchasers, who have paid the purchase money, would be, it seems to us, against equity and good conscience.

It is argued by appellant, that the transfer to Godard, and Godard's receipt to Love, being made at the same time, should be considered as forming one contract. This may be true, as between Love and Godard's estate; but not as between him and third persons, purchasers without notice. The receipt or obligation from Godard to Love, shows that Godard was trustee, clothed with the legal title; Godard was to sell the land for steamboat purposes; and on failing to do so, he was to reconvey it to Love. The appellees, having purchased the title in the estate, without notice, have rights equal, if not superior, to a prior equitable owner. Where equities are equal, the rule applies, *potior est conditio possidentis:* (1 Story's Eq. Jur. § 434.)

BELL, J. Andrew A. Love filed his petition in the court below, representing that, on the 11th day of August, A. D. 1851, he had been induced to execute and deliver to one Lewis Godard, a transfer of his headright certificate for three hundred and twenty acres of land. He represented further, that on the same day, Godard executed and delivered to him an instrument of writing, acknowledging the receipt of the assignment or transfer of the land certificate, and stating that Godard was to locate the land certificate, for one third of the land, pay all expenses, &c. The instrument further recited, that Godard was authorized to sell Love's interest of two thirds in the land, for steamboat stock, if he could get two hundred dollars for it; and if he did not sell it, then Godard was to return to Love, his part of the land arising from the certificate.

The petition stated the death of Godard, and the appointment of John W. Berry, as his administrator; further, that Berry procured the patent for the land to be issued in the name of Godard, assignee of Love; and that Berry, after having received notice of Love's rights, procured from the County Court an order for the sale of the land; that he sold it, and that Henry G. Brewer became the purchaser; and that Brewer subsequently sold half of the land to J. W. Ferris. The petition prays that the plaintiff's right to two thirds of the land may be established by the decree of the court, &c.

The transfer of the certificate, made by Love to Godard, on the 11th of August, 1851, and Godard's receipt for the same, of the same date, were recorded in Kaufman county. The land was located in Ellis county.

The testimony shows that the plaintiff, Love, paid a portion of the expenses for surveying the land. Notice of the terms of the contract between Love and Godard, is brought home to Berry, the administrator, before the sale of the land was made. The testimony shows, that Brewer and Ferris paid the purchase money; but does not show, that either of them had any notice of Love's rights, before they purchased. The defendants tendered, in court, the amount of the expenses of surveying paid by Love.

A jury was waived in the court below, and the cause submitted to the judge. Judgment was rendered, that the plaintiff take nothing by his suit, &c.

We are of opinion, that there was no error in the judgment of the court below. The principle is well settled, that where one purchases from a party having the legal estate, without notice of the existence of any trust, such purchaser takes the estate, relieved of the trust. In the present case, Godard had the legal estate in the three hundred and twenty acres of land. A purchaser from Godard, in his lifetime, without notice of the trust in favor of Love, would undoubtedly have taken the estate, free from the trust. Can a purchaser from Godard's administrator, without notice of the trust, be affected by the equity in

favor of Love ? We think not. It is true, that the doctrine of *caveat emptor* is said to apply to sales by administrators. But this doctrine can only apply so far as to affect a purchaser at an administrator's sale, with notice of everything that he could have ascertained by the use of ordinary diligence. If Godard's receipt to Love for the land certificate, had been of record in the county of Ellis, where the land was located, then the purchaser, at the administrator's sale, would have been affected with notice of Love's equity, and the trust in favor of Love would have followed the land in the hands of the purchaser. It is true, that a purchaser at administrator's sale, purchases at his own risk, and only takes such title as the estate has; but, he takes all the title the estate has. In this case, the estate of Godard had a perfect legal title to the three hundred and twenty acres of land, by virtue of Love's transfer of the certificate, and the issuance of the patent to Godard, as assignee. In the hands of Godard, and of his adminstrator, the trust in favor of Love attached to the legal estate ; but it only attached because of Godard's knowledge of Love's rights, and because the administrator, in contemplation of law, is affected by knowledge on the part of his intestate. The purchaser at the administrator's sale, had no knowledge or notice of Love's rights ; and the law, not permitting him to be affected by secret equities, of which he had no notice, it follows, that he took the legal title which was in the estate, free from the trust in favor of Love.

We are therefore of opinion, that the judgment of the court below be affirmed.

Judgment affirmed.