JANE C. HOLMES ET AL. V. C. R. JOHNS ET AL.

(Case No. 2731.)

1. COLONIZATION LAWS, AS AFFECTING SALES BY COLONISTS.— After the passage of the law of March 26, 1834, and up to the time when the constitution of the republic was adopted, all sales of land granted to settlers, and agreements for their sale, before the issuance of title, were nullities.

2. VOID SALES.— The fact that a vendor fails to restore purchase money paid on a sale prohibited by law, and therefore void, raises no equity in the purchaser entitling him to an enforcement of the contract; otherwise the law itself would be defeated.

3. VENDOR AND VENDEE.— The rule that where a vendor has no title at the date of sale, any title afterwards obtained by him will inure to the benefit of the purchaser, does not apply if the sale was prohibited by law.

4. WILLS — JURISDICTION OF PROBATE COURT.— One dying in 1849 provided in his will that his executors should settle all claims against his estate, and make partition of it, with no other action by the probate court except to probate the will, grant letters testamentary, and to receive the inventory. *Held,*

(1) That after the executors had qualified and filed the inventory, the probate court had no jurisdiction over them, so long as they continued to discharge the trust.

(2) Conveyances made by the executors to pay debts needed no approval by the court and derived no validity therefrom.

(3) Its approval thereof was without jurisdiction, and the record thereof charged no one with notice of the same.

5. INNOCENT PURCHASER.— One may be an innocent purchaser from the heir and takes the estate as against an unrecorded deed from the ancestor.

6. INNOCENT PURCHASER UNDER SPECIAL WARRANTY.— A deed containing a special warranty against all the world except the government is one under which the vendee may claim as an innocent purchaser, if other incidents to support that claim exist.

APPEAL from Hays. Tried below before the Hon. John P. White.

Suit by Jane C. Holmes *et als.*, brought the 23d of January, 1873. In the petition it was alleged that the plaintiffs, as the widow and children of Eli E. Gaither, were the legal and equitable owners of a league of land on the San Antonio road, in Hays county, known as

league No. 1, and the same was set out by metes and bounds.

That they deraigned title to the land:

First. By deed from John Stewart and Bartlett Sims to Chrisman, in trust for D. L. Richardson, deceased.

Second. By deed from the executors of Richardson to plaintiffs, and attached copies of the deeds to their petition; that D. L. Richardson paid the purchase money, and that Chrisman set up no title in his own right, but always' held it in trust for Richardson, his heirs or vendees; that there was a clerical error in the deed from Stewart and Sims, in this: that it stated the date of the grant to be 10th of September, 1835, when in truth it was the 20th of September, 1835; and that the deed described it as a league granted to John and James Stewart, when in truth it was granted to John Stewart alone; and asked for judgment and decree divesting defendants of all claim to the land, etc.

On the 13th of March, 1873, all the defendants filed a general demurrer and plea of not guilty.

On the 15th of July, 1873, defendant Johns amended, and alleged that on the 25th of April, 1855, the legal title to the league was in defendant, Mrs. Sexton; that he, Johns, purchased the southwest half of it from Sexton and wife for $2,800, and paid them without notice of plaintiffs' claim.

On the 10th of November, 1873, defendant Johns amended his answer, and pleaded that, if John Stewart and Bartlett Sims did convey the land to Chrisman, that Stewart was at the time a minor, and that no money was paid Stewart; that on the 4th of May, 1852, Stewart disaffirmed the contract and sold the league to John Hancock for $1,000, which Hancock paid him. That on the 23d of July, 1867, Hancock conveyed the land to him, Johns, and that if Stewart did receive anything for the land he was willing to pay it back.

On the 10th of November, 1873, Sexton and wife filed an amended answer, denying the execution of the deed from Hines and Faircloth to plaintiffs, which was sworn to by the defendant, F. B. Sexton, and said that if the deed was executed that it was unauthorized and void:

1st. Because the will of Richardson gave them no power.

2d. Because Richardson owed no debts at his death.

3d. Because there never was any application to the probate court of Sabine county for an order, or any order made directing said executors to make said deed.

4th. If said executors made said deed it was without consideration; that if D. L. Richardson ever executed any obligation to E. E. Gaither for land, it did not include the land in controversy, and that it was a stale demand, and alleged that Mrs. Sexton was one of the children and one of the devisees of D. L. Richardson; that his estate was worth $117,098.73; that her share was $39,032.91; that the land was set apart to her, for which she was charged $4,428, and by that means she paid the other heirs $4,428 for it, which was set apart to her the 31st day of May, 1851; that she thereby became an innocent purchaser of the league; that the partition was confirmed by the probate court, etc. They pleaded stale demand, and denied the validity of plaintiffs' deed and the jurisdiction of the probate court of Sabine county to confirm the deed to plaintiffs.

Plaintiffs' exceptions to pleadings need not be noticed in view of the opinion.

In reply to the answer of Johns that he was an innocent purchaser from Sexton and wife without notice, plaintiffs charged him with notice, because his deed showed upon its face that he purchased from the heirs of D. L. Richardson, and was therefore, they claimed, chargeable with notice of whatever defect there was in his title.

On the 9th of March, 1874, Johns amended, and alleged

that the deed from Stewart to Hancock contained a special warranty that he purchased Hancock's title to protect himself, and that he and Hancock were innocent purchasers, and had paid the money without notice of plaintiffs' title.

On the 9th of March, 1874, plaintiffs filed another amended petition and replication, and alleged: 1st. That the executors of Richardson, after they had returned an inventory of the estate, had full power to make the deed to plaintiffs, and that the deed was valid and conveyed full title to plaintiffs. 2d. That the will conferred full power upon the executors to make a deed to plaintiffs after the inventory was filed, and that the probate court confirmed the deed, which made it valid. 3d. They denied the charge that the deed was without consideration, and alleged that a valid consideration was paid D. L. Richardson, in his life-time, by E. E. Gaither.

On the 27th of July, 1874, plaintiffs again filed an amended petition and replication to the answer of defendant Johns, and denied that the legal title to the land was in Mrs. Sexton on the 21st of April, 1855; alleged that it was in plaintiffs by virtue of the deed, executed the 31st of May, 1851, by the executors of D. L. Richardson, which was confirmed by the probate court of Sabine county, which court had exclusive jurisdiction of the subject matter and the parties; that at the date of the purchase by Johns, Mrs. Sexton had neither legal or equitable title to the land; that plaintiffs' equitable right to the land accrued before the death of Richardson, and could not be defeated by his heirs.

They charged that Hancock only paid Stewart $100 instead of $1,000, as stated in the deed, and denied the right of Johns to set up the plea of infancy for Stewart, because neither Johns nor any one of the parties were privies in blood or in estate, and charged that the $100 paid by Hancock to Stewart was grossly inadequate to

the value of the land at the time, and that the purchase was a gambling and fraudulent transaction. That if Stewart was a minor when he executed the deed to Chrisman, that he had not within a reasonable time after his majority, and after the 20th day of January, 1840, done or performed any act tending to repudiate the deed to Chrisman, and hence that his right to do so, as well as all others claiming under him, was barred by lapse of time; therefore said defense could not avail the defendant Johns; and they deny the right of Johns to set up the defense that Stewart was a minor when he executed the deed, and that he received no consideration; or, if it was true, that then Stewart's right to avoid or set it aside for that reason is barred by lapse of time, and because it is variant to and inconsistent with the rights which they claim to have derived by title under the will of D. L. Richardson.

On the 27th of July, 1874, defendants filed an amended answer, and pleaded: 1. Statute of limitations of ten years to plaintiffs' claim.

The pleadings were very lengthy, and notice of much of their contents is omitted.

The material facts of record, in evidence, affecting title on which plaintiff relied, were:

1. A grant from the government to John Stewart to the league of land, dated September 20, 1835.

2. An original deed from John Stewart (then a minor) and Bartlett Sims, conveying a league of land granted to "John and James Stewart" to H. Chrisman, in trust for D. L. Richardson, dated September 14, 1835 (six days before title issued).

3. Deed of release from H. Chrisman to D. L. Richardson, dated December 1, 1837, which also describes only a league of land granted "to John and James Stewart."

4. A deed purporting to be a conveyance from Willie Faircloth and Elbert Hines, executors of the last will and

testament of D. L. Richardson, conveying to Jane C. Holmes and the heirs of Gaither a "league of land, No. 1, on Plum creek, bought of John Stewart and Bartlett Sims, . . west of the Colorado river, and on the San Antonio road," dated May 31, 1851, and never recorded in Hays county until November 2, 1872.

5. A petition to the probate court of Sabine county asking its ratification of the act of the executors in making the deed last referred to. This petition was filed July 26, 1851, two months after the deed was executed; and on it the act of the executors in making the deed was ratified by a court whose jurisdiction had been excluded by the terms of Richardson's will. This proceeding of the probate court of Sabine county was first recorded in Hays county May 7, 1873.

Johns, who claimed three-fourths of the league, and Sexton and wife one-fourth, derived title as follows, viz.:

1. Richardson died on February 11, 1849, leaving a will in which he appointed Elbert Hines, Willie Faircloth and David S. Kaufman his executors. This will, after making certain special bequests, conferred on the executors no power except to pay debts and make partition of his estate, and by its terms excluded the probate court from all jurisdiction over the estate except to probate the will and receive the inventory. Eliza S. Sexton, one of the defendants, was a daughter of Richardson, and claimed title under the act of partition made by the executors on the 31st of May, 1851, the day on which the plaintiffs claim that the same executors had conveyed by deed the same land to them.

2. On the 21st of April, 1855, Sexton and wife conveyed, by warranty deed, to C. R. Johns, the southwest half of the John Stewart league, for $2,800, there being at that time no evidence of any adverse claim on record in the county where the land was situate, nor in Bastrop or Travis, of which Hays county had once formed a part;

Johns and Sexton both swearing as witnesses that they had no notice of any adverse claim.

3. But on the 4th of February, 1852, John Stewart, who. was a minor, unable to read and write, when the deed to Richardson from Sims and Stewart was made (and who swears he never executed that deed), sold and conveyed, for a valuable consideration paid, the entire league to John Hancock by deed of special warranty.

4. On the 23d of January, 1867, Johns (still ignorant of the plaintiffs' claim, which had not yet been recorded), being threatened by the Hancock title, purchased the same from Hancock.

5. On the 24th of May, 1867, Sexton and wife, to indemnify Johns for the money paid Hancock to protect their warranty, conveyed to him one-half of the northeast half of the league, thus vesting in Johns title to three-fourths of the league under such title as Mrs. Sexton inherited from Daniel S. Richardson.

6. On the 19th of May, 1868, Johns conveyed to Mrs. Sexton such title as he had previously obtained from Hancock to the one-fourth of the league, which she still claimed under title from her father.

The 27th article of the colonization laws of 1825 is as follows: " Art. 27. The contractors and military, already mentioned, in their turn, and those who have acquired lands by purchase, can alienate the same at any time, provided the successor obligates himself to cultivate the same within the same term as was obligatory on the part of the original proprietor, likewise reckoning the term from the date of the primitive titles. The other settlers shall be authorized to alienate their land when they shall have completed the cultivation thereof, and not before."

The power to alienate was extended by article 36 of decree No. 272, of the 26th of March, 1834, which authorized settlers after they had received their titles to sell their lands.

Opinion of the court.

Verdict and judgment for plaintiffs for half the league of land, and in favor of Johns for the other half, from which both parties appealed.

*F. W. Chandler*, for appellants.

I. Johns, by his purchase from Sexton and wife, could only take such title, legal or equitable, to the land in controversy as vested in Mrs. Sexton at the death of her father.

II. No title was vested in Mrs. Sexton to the land in controversy in this suit; hence C. R. Johns cannot in law, equity or good conscience be an innocent purchaser in good faith of the half league awarded to him by the jury under the instructions of the court. Dormer *v.* Fortescue, 3 Adkyns' R., 134; Choppin *v.* Tennehaugh, 2 Brown, 296; Brush *v.* Ware, 15 Peters, 93; Pierson & Harkness *v.* Ivey, 1 Yerg., 296; Nelson *v.* Allen & Harris, 1 Yerg., 360; Dexter *v.* Harris, 2 Mason, 536; York *v.* McNutt, 16 Tex., 13; Dart on Vendors, 462; 8 Cranch, 462; 10 Peters, 177; 7 Peters, 252; 12 S. & R., 389; 2 Watts, 459; Vance *v.* McNary, 3 Yerg., 171–177; Rodgers *v.* Cawood, 1 Swan, 142; McCulloch *v.* Eudaly, 3 Yerger; Crosby *v.* Houston, 1 Tex., 237; Ralls *v.* Graham, 4 Monroe, 120; Hancock *v.* Beverly's Heirs, 6 B. Monroe, 531–533; McCannant *v.* Patterson, 39 Mo., 110; Whittington *v.* Wright, 9 Geo., 23; Walton *v.* Reager, 20 Tex., 109; Ashe *v.* Livingston, 2 Bay (S. C.), 80; Rodgers *v.* Gibson, 4 Yates (Pa.), 111; Harris *v.* Hardeman, 27 Tex., 248; Wright *v.* Dailey, 26 Tex., 731; De Witt *v.* Monroe, 20 Tex., 289; Rogers *v.* Burchard, 34 Tex., 441.

*Terrell & Walker*, for appellees.

QUINAN, J. COM. APP.— That the sale and conveyance of the league of land in controversy by John Stewart and Bartlett Sims to Chrisman, being made in violation of law before the issuance of the final title to Stewart, was

a nullity, is well settled by repeated decisions of this court. Hunt's Heirs *v.* Robinson, 1 Tex., 748; Robins' Heirs *v.* Robins, 3 Tex., 396; Spillars *v.* Clapp; Hunt *v.* Turner, 9 Tex., 385; Burleson *v.* Burleson, 11 Tex., 2; Atkinson *v.* Bell, 18 Tex., 479; Babb *v.* Carrol, 21 Tex., 768; Desmuke *v.* Griffin, 10 Tex.; Williams *v.* Chandler, 25 Tex. 4.

In Atkinson *v.* Bell the grantee of the land, Babbitt, sold to Bell a portion of his three-fourths league, acknowledging payment of the price. The deed was dated March 15, 1835. The final title from the government to Babbitt was issued October, 1835. Chief Justice Hemphill said: "We have held in various cases in effect, that prior to the law of March 26, 1833, sales made by colonists or settlers of their headrights before the lapse of six years from the date of the title were void; and we have also held, that after the law of March 26, 1834, up to the date of the constitution of the republic, sales of land by settlers, and agreements for the sale of their land, made before the final titles were issued to them, were nullities. There may be equities such as taking possession, etc., arising subsequent to the sale, which would sustain the claim of the purchaser against the title of the vendor. . . . But under the facts in evidence the title of the appellee is not such as will maintain the action against the defendant. The title of Babbitt to Thomas Bell is void."

In Williams *v.* Chandler, 25 Tex., 10, which was a suit brought upon a contract of sale in 1831, when the law prohibited the sale, Chief Justice Wheeler said: "It is beyond question that the contract of sale of December 19, 1831, was in contravention of law and void under the decisions of this court, which must be deemed to have settled the law applicable to contracts like the present. . . . The plaintiff is not shown ever to have been in possession of the land, or ever to have exercised any act of ownership respecting it. There is no case in which the right

of the purchaser under a contract like the present has been upheld, unless supported by possession and strong equities, independently of the contract."

In the present case, the plaintiffs allege no facts upon which to base an equitable title to the land sued for. They have never been in possession of the land, nor have those under whom they claim, or exercised acts of ownership over it. There is no proof of a subsequent ratification by Stewart of the illegal sale or acquiescence in their title. Their deeds were not put on record until more than a lifetime had elapsed from their execution, and long after the land had passed into the possession of the defendants. It has been seen that in every case in which relief has been given to purchasers under sales like the present, it has been given, not because of the purchase or the payment of the price, but that there has been long possession of the land held under it; long acquiescence in the sale by the parties or their heirs; large improvements made; and the circumstances such that to disturb the possession of the vendees would be to vindicate an ancient violation of the law, by the infliction for the benefit of its violators of a present unconscionable injury.

The plaintiffs insist that the payment of the price by Chrisman to Stewart and Sims raises an equity entitling them to an enforcement of the contract, as there has been no offer to return it,— that Stewart and those who claim under him in this suit cannot retain both the price and the land. Now the sale was a void sale. The refusal to refund the price could not validate it. Manifestly that would be a virtual annulment of the law which prohibited such sales.

It is urged that although Stewart had no title to the land when he sold, and could make none, yet as he afterwards acquired title, this after-acquired title inured to the benefit of his vendees, who took the title by estoppel. This is certainly the general rule. It was insisted upon

in Atkinson *v.* Bell, but Chief Justice Hemphill replied, "The rule that where a vendor has not title, and sells, any title afterwards procured by him will inure to the benefit of the purchaser, does not apply in cases where such sale was prohibited by law. Such favor shown to a purchaser at a prohibited sale would thwart and defeat the policy of the government."

This sale, then, by Stewart and Sims to Chrisman being the foundation of the appellants' title, being invalid as prohibited by law, and no such equities being alleged or proven by them as would support a title under or by consequence of it, it follows that the verdict and judgment in their favor for one-half the league of land cannot stand. The judgment is erroneous and should be reversed.

It may be proper, as we cannot anticipate what proof may be made upon another trial, that we should briefly indicate our views of the questions which have been raised on this record and may again arise.

1. The plea of *non est factum* filed by Sexton was filed too late. The only effect of that, however, was to throw upon defendants the burden of proving the conveyance by Faircloth and Hines to be as they alleged, a forgery.

2. That by the terms of Richardson's will his executors had power to settle all claims against his estate and make partition of it without the necessity of any action on the part of the probate court, except, indeed, the probate of the will and grant of letters testamentary, and reception of the inventory, cannot be doubted. The statute authorized him to withdraw the administration of his estate from the control of the probate court. Having qualified as executors and returned the inventory, the probate court had no further jurisdiction over them or the estate, so long as they continued to discharge the trust. It could only acquire jurisdiction in the contingencies and by the means which the statutes prescribe. Hence it follows

that the partition of Richardson's estate made by them, or conveyances executed in discharge of any liabilities of the estate, needed no approval by the probate court, and acquired no aid or validity therefrom. Its proceedings were outside of its jurisdiction, and its records affected no one with notice of them. Pasch. Dig., art. 000; Runnels v. Runnels, 27 Tex., 521; McDonough v. Cross, 40 Tex., 251.

3. That Johns purchased the land claimed by him from Mrs. Sexton as heir of Richardson does not of itself preclude him from availing himself of all the protection which our registration laws accord to innocent purchasers. Whether he was such in fact must be ascertained from a consideration of all the circumstances of the transaction. His deed purports to be a conveyance of the land, and not merely of the right or claim of Mrs. Sexton to it. He paid full value for it, purchased it from the apparent owner, after partition of Richardson's estate, and in fact, as it appears, without actual knowledge of any adverse claim. The law vested the legal title of the estate of the father in his heirs upon his death.

The observations of Judge Green in McCulloch v. Eudaly, 3 Yerg., 348, in a similar case are applicable here, and we quote them as aptly expressing our views: "The estate is thrown upon the heir with all the rights the ancestor enjoyed and subject to all the incumbrances he had created upon it. The registry acts are intended for the protection of the community from imposition and frauds. If a purchaser who is not in possession of the land may keep his deed in his pocket for ten years, concealed from the world, and then produce it and overreach all other deeds which in the mean time may have been made for the same land, no man would be safe in the purchase of an estate. This mischief would equally exist whether the ancestor or the heir continue the apparent legal owner of an estate which had been sold."

We may add, that the withdrawal of conveyances by

heirs from the protection of the statutes of registration, so that one who purchased from them should not be considered an innocent purchaser, would tend very greatly to depreciate the salable value of the estate they inherited. And such a result would be at variance with the spirit and policy of our laws. Taylor v. Harrison, 47 Tex., 454; Harrison v. Baring, 44 Tex., 255; Love v. Berry, 22 Tex., 378; Graham v. Hawkins, 38 Tex., 634; Vaughan v. Greer, 38 Tex., 530.

4. The minority of Stewart at the date of the alleged conveyance to Chrisman presents no material question. If otherwise valid, his disaffirmance after the great length of time which elapsed after his arrival of age until he conveyed to Hancock, under the circumstances of the case would not invalidate it. On the other hand, if it was, as we have seen, a void deed, it could derive no validity from his mere silence or acquiescence.

5. The deed from Stewart to Hancock was not a mere quit-claim deed. It purported to convey the land and not merely his right, title or claim to it. It contained a special warranty, it is true, but that warranty was against all the world except the government. It is not perceived why the defendants could not claim under it as innocent purchasers, if the other incidents to support that claim existed.

6. Whether the partition under which Mrs. Sexton acquired the land in controversy contained a sufficient description of the land to identify it, was a question of fact for the jury. It was sufficient if it could be rendered certain by the conveyances and the inventory in the estate.

7. We have commented upon the questions presented by the briefs of counsel which may possibly be considered upon another trial. There were many points reserved to the ruling of the judge which are not insisted upon, and a discussion of which would not be profitable. We pretermit any expression of opinion as to the pleadings, for

they may be amended as upon the evidence so .voluminously set out in the transcript. No proof was offered to sustain the allegation of the plaintiffs that there was a mistake in the date of Stewart and Sims' conveyance to Chrisman. The presumptions always indulged in favor of the acts of the officials in extending land titles would seem to leave no room to doubt that in fact the grant to. Stewart was issued on the day of its date. It may be that another grant had been partially expedited to John and James Stewart, as recited in the deed to Chrisman, which for good cause was recalled, and the grant in the present case issued to John Stewart subsequently.

We are of opinion the judgment should be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered November 28, 1881.]