Henry Le Page et al. v. John Slade.

No. 6646.

1. **Burden of Proof—Trial of Right of Property.**—Where personal property is seized by an officer and taken from the possession of an agent of the defendant, in a trial for the right of property at suit of a claimant the burden of proof is upon the plaintiff.

2. **Same—Charge.**—The court having instructed the jury that the burden of proof was upon the plaintiff, and further had repeated the charge in enumerating the allegations to be found sustained by the testimony in order to find a verdict for the plaintiff, this was sufficient, and it was not error to refuse it when asked by the claimant.

3. **Fraudulent Intent — Notice.** — In an attack of a sale of personal property as made with intent to hinder, delay, and defraud creditors, it being shown that a valuable consideration was paid, it was necessary to show that the purchaser had actual or constructive knowledge of the fraudulent intent. A refusal so to instruct is error.

4. **Same — Issues.** — See facts requiring that the issue be submitted whether the sale in controversy was made with intent to defraud the creditors of the vendor, and also whether the purchaser knew or was chargeable with knowledge of such intent.

5. **Same—Charge.**—The court charged the jury that to justify a verdict for plaintiff (avoiding the sale) they must find that Thurber & Co. (the parties making the sale) were insolvent at the time of the sale, and that the claimant (the purchaser) knew it. This was not the required charge or its equivalent. The vendor may be insolvent and yet make a legal and valid conveyance of his property for the purpose of securing or paying his just debts.

6. **Payment by Promissory Note.** — A purchaser defending as a bona fide purchaser, and who paid by his promissory note, must also show that the note was negotiable. The fact will not be presumed.

7. **Promissory Note Appearing to be a Valuable Consideration.**—The flock of sheep was subject to a lien in excess of its value. The sale was for full value and the note was deposited with the prior lien holders, to whom payment was to be made, and when made the lien was to be released to the maker. *Held*, these facts showed a valuable consideration for the sale.

Appeal from Presidio. Tried below before Hon. T. A. Falvey.

The opinion contains a statement.

*H. E. Barnard* and *Ogden & Johnson*, for appellants.— 1. The burden of proof was upon the plaintiff, and the court should so have instructed the jury. Rev. Stats., art. 4838.

2. The burden of proof was clearly upon the plaintiff to establish the fact that the sale to Le Page was fraudulent, and made for the purpose of hindering, delaying, and defrauding the creditors of E. R. Thurber & Co., and it was error of the court to refuse to so charge, as asked by the defendant in special charges. Ellis v. Valentine & Son, 65 Texas, 549, and cases cited.

3. The promissory note given by Le Page was a sufficient and valuable consideration, especially when it was taken at the instance of and for the benefit of the principal creditors, and was turned over to and accepted by them and part payment thereon had been made to them by Le Page.

Ellis v. Valentine & Son, 65 Texas, 549; Dozier v. Matson (a Missouri case), 7 S. W. Rep., 270, and cases cited; Seeligson & Co. v. Brown & Brown, 61 Texas, 183.

4. It was manifest error for the court, by its refusal to give the special charges asked by defendant, to exclude from the consideration of the jury the fact that this sale was made to Le Page at the instance, with the consent, and for the benefit of O'Connor & Sullivan, who were the principal creditors of Thurber & Co., and who held a lien upon this identical property together with others to secure an overdue note. Ellis v. Valentine & Son, 65 Texas, 549, and cases cited; Seeligson & Co. v. Brown & Brown, 61 Texas, 183; McQuinnay v. Hitchcock, 8 Texas, 33; King v. Russell, 40 Texas, 124; Key v. Brown, 67 Texas, 300.

5. Even should Le Page be considered as having purchased for the benefit of O'Connor & Sullivan, then the delivery of possession of the mortgaged property to the mortgagee or any one for him converted it into a pledge, and the pledgee had a special title in the property which protected it from the attachment, and the sale to Le Page was a virtual foreclosure and passed the entire title. Hudson v. Wilkinson, 61 Texas, 606; King v. Ins. Co., 58 Texas, 673; Luckett v. Townsend, 3 Texas, 131.

*Marion F. Brown* and *Jno. A. Green, Jr.*, for appellee.— 1. The court did not err in refusing to give the first special charge asked by the defendants, because the court had already charged the jury as to the question upon whom lay the burden of proof. Newman v. Farquhar, 60 Texas, 640; Tucker v. Hamlin, 60 Texas, 171; Sayles' Civ. Stats., art. 1319, note.

2. The court did not err in refusing to give the second charge asked by defendants, because if the sale was made for the purpose of hindering, delaying, and defrauding creditors, and such purpose was known or ought to have been known to Le Page, then it is immaterial what Thurber & Co. did with the consideration paid them by Le Page. Seeligson & Co. v. Brown & Brown, 61 Texas, 180.

3. The court did not err in refusing the second charge asked by defendants, because there are no facts in the record showing that Le Page paid a valuable consideration for the sheep. Brown v. Hedge Co., 64 Texas, 396; Seeligson & Co. v. Brown & Brown, 61 Texas, 180; Bank v. Lovenberg, 63 Texas, 506; Lambeth v. McClinton, 65 Texas, 108; Greenleve, Block & Co. v. Blum, 59 Texas, 124; Blum v. McBride, 69 Texas, 60; Elser v. Graber, 69 Texas, 222.

4. The court did not err in refusing to give the third charge asked by the defendants, because the same is not the law. If Thurber & Co. were insolvent and Le Page was insolvent, it makes no difference under the facts of this case whether Le Page knew that Thurber & Co. were making the transfer for the purpose of hindering, delaying, and defrauding their creditors or not. If Le Page was insolvent his note for $14,000 was

worthless and was no consideration. Rev. Stats., art. 2465; Brown v. Hedge Co., 64 Texas, 396; Seeligson & Co. v. Brown & Brown, 61 Texas, 180; Bank v. Lovenberg, 63 Texas, 506; Lambeth v. McClinton, 65 Texas, 108; Greenleve, Block & Co. v. Blum, 59 Texas, 124; Blum v. McBride, 69 Texas, 60; Elser v. Graber, 69 Texas, 222.

COLLARD, JUDGE.—This is an action of trial of the right of property.

John Slade, the appellee, holding and owning a note of some $3000 against E. R. Thurber & Co., brought suit on the same and levied attachment on 109 sacks of wool as the property of the firm. Henry Le Page, the appellant, claimed the property by affidavit and bond. The trial of the case resulted in a verdict and judgment for Slade, the attaching creditor, from which Le Page and his bondsmen appealed.

The first error assigned is that the court refused to instruct the jury as requested by the defendant that the burden of proof was upon the plaintiff. The burden of proof was upon the plaintiff, because the wool when seized was in the possession of the defendant's agent. Rev. Stats., art. 4838. But in the general charge the court instructed the jury in terms that "the burden of proof in this case is upon the plaintiff, John Slade." In addition to this, in charging upon the law of the case, he submitted seven propositions to the jury, all and each of which they were required to find in the affirmative by a preponderance of proof before they could find for plaintiff, Slade; and if they did not so find in the affirmative all and each of said propositions, their verdict should be for the defendant. This charge was certainly sufficient to inform the jury that the burden of proof was upon the plaintiff, and that it was upon the plaintiff upon each and every one of the propositions submitted. The general instruction that the burden of proof was upon the plaintiff was sufficient, without the repetition of the same principle as to each of the several propositions.

Defendant assigns as error the refusal of the court to give a special requested charge that the burden of proof was on the plaintiff to show that the sale of the sheep alleged to be illegal and fraudulent was made by E. R. Thurber & Co. to Le Page with intent to hinder, delay, and defraud their creditors, and that at the time of the sale Le Page knew of the intent, or that the sale was made under such circumstances that he was bound to take notice of the intent, provided he paid a valuable consideration for said sheep, and that the consideration so paid was used to pay just debts then due and owing by Thurber & Co. to any of their creditors.

What we have said about the necessity of again informing the jury as to where the burden of proof was need not be repeated. The rest of the requested charge we construe to mean that if Le Page paid a valuable consideration for the sheep, which consideration was used to pay valid debts of Thurber & Co. before a verdict could be legally rendered against Le Page, it must appear from the evidence that the sale of the sheep was

made with intent on the part of Thurber & Co. to hinder, delay, or defraud their creditors, and that Le Page knew of such intent or had constructive notice of the fact by the circumstances of the sale which were known to him.    One of the conditions upon which the plaintiff could recover, as laid down in the court's charge, was that the jury must find that the sale was made by Thurber & Co. "to hinder, delay, or defraud their creditors."    It was not necessary to repeat the charge, but the court failed to inform the jury that it was necessary to find that Le Page should have had actual or constructive knowledge of the intent to defraud on the part of the firm of Thurber & Co.

In another special charge asked this omission in the court's charge was pointed out and corrected.    It was on this point to the effect that if the consideration paid by Le Page for the sheep was his negotiable promissory note for $14,000, which was accepted by Thurber & Co. and immediately transferred and delivered by them to O'Connor & Sullivan as collateral security for a just and valid debt then held by O'Connor & Sullivan against Thurber & Co., and if Le Page had paid installments upon the note, then, unless the evidence showed that Le Page knew, or under all the circumstances might have known, of the fraudulent intent of Thurber & Co. in making the transfer, the verdict should be for the defendant Le Page. This requested charge was also refused by the court and the refusal is assigned as error.

In order to a better understanding of the questions involved in these assignments it would not be improper to state the important facts as adduced in evidence by both sides.

Thurber & Co., on June 24, executed to Le Page a transfer of 14,000 head of sheep on a ranch in Presidio County, together with "fifteen head of horses, all wagons, tents, camp outfits," etc., belonging to the ranch, taking his individual promissory note for $14,000 in payment, the note due and payable on demand, bearing 12 per cent interest per annum; a lien was reserved in the transfer upon the property to secure the payment of the note.    The sale was made subject to a chattel mortgage in favor of O'Connor & Sullivan, creditors of Thurber & Co. to the amount of $17,000. It was stipulated in the transfer that as the wool was clipped from the sheep it was to be shipped to one Ed. Kotula, of San Antonio, by him sold, and the proceeds applied first to the payment of such advances to run the ranch as might be made by him to Le Page, and the remainder of the proceeds to be paid over to O'Connor & Sullivan, to be applied to the discharge of the $14,000 note.    It was also stipulated that the proceeds of sale of mutton from the ranch should be applied to the payment of the $14,000 note; that the sheep should not be removed out of Presidio County, nor sales of mutton or other sheep be made without the consent of the vendors and the holders of the note, O'Connor & Sullivan; that any evasion or infringement of the conditions of the contract of sale should at

once cancel and nullify the same at the option of the vendors or the holders of the note; and that should payment of the note not be made on demand immediate possession of the property was to be given to the vendors or the holders of the note without resort to judicial proceedings.

It seems to be contemplated by the agreement of sale that the note was to be deposited with O'Connor & Sullivan, and that all payments on it were to be made to them. It was in proof that the note was left with them for collection, and that such collections as were made were to be applied to their secured claim of $17,000. The evidence tended to show that the sheep and about 12,000 acres of land were mortgaged by Thurber & Co to secure the $17,000, and also to secure another debt of some $13,000, due by them to a Mrs. Villeneuve.

June 24, 1886, the firm of Thurber & Co. owned something like 12,000 acres of land, about 16,000 head of sheep, 15 horses, and camping outfit. The firm owed Mrs. Villeneuve $12,000 or $13,000, Dan. Sullivan, banker at San Antonio, about $21,000, Slade about $3000, and the firm of Uriah Lott $2000.

The value of the land and sheep does not appear except as follows: Slade testified that after the sale he applied to Sullivan to know how he was to obtain payment of his note, and Sullivan told him he would pay it if he, Slade, would sell the land at $1.50 per acre; that he did procure a purchaser at the price, but Sullivan then raised the price to $2; that Sullivan then told him if he would sell the sheep at $1 per head he, Sullivan, would pay the note. Slade could not sell the sheep at the price named.

The testimony shows that it was agreed at the time of the sale that O'Connor & Sullivan were not to press Le Page on the $14,000 note, but to allow him all the time necessary in which to pay it, and that if he kept the interest paid up and paid on the principal as he sold muttons and wool they would not press him. The bill of sale itself shows and it also appears from the testimony that Le Page was to take charge of the ranch and sheep and to run the same; that one Kotula, of San Antonio, agreed to furnish him supplies to enable him to carry on the business, and that Kotula was to receive his pay out of the proceeds of the sales of wool, which was to be shipped to him when sheared for that purpose, the residue of such proceeds to be paid to O'Connor & Sullivan on the $14,000 note held by them as collateral; and it was also in proof that O'Connor & Sullivan agreed with Le Page that when he paid the note for $14,000 they would release the sheep to him free of their mortgage.

Slade testifies to another significant fact which, if true, tends to prove that the sale was simulated and was not intended to convey the property, namely, that after the sale he, E. R. Thurber, and Le Page agreed to let him have 1000 head of the sheep for his note. This testimony is corroborated too by a letter of Le Page to Slade, of date of September 16, 1886,

nearly three months after the sale, in which he says: "I want to settle our affairs immediately. I will expect you here Saturday, Sunday, or Monday next. You will please bring the note you hold on the company (E. R. Thurber & Co.), and I shall give you an order on Mr. Way for 1000 sheep. Uncle wrote me about your letter to him. I have also other particulars to talk to you about."

Way was Le Page's foreman in charge of the sheep; E. R. Thurber, of the firm of Thurber & Co., was the uncle of Le Page. We need not proceed further to mention the various points in the testimony which, if true, would tend to support the issues between the parties. The evidence warranted the court in submitting to the jury the issue as to whether Thurber & Co. made the sale to defraud their creditors, and also authorized a charge as to whether Le Page knew of such fraudulent intent or had knowledge of such facts as would put a prudent man upon inquiry. If Le Page paid a valuable consideration in the execution and delivery of his note for $14,000 and did not know of the fraudulent purpose of Thurber & Co., and the circumstances known to him did not put him upon inquiry, the sale would not be void for fraud as to him, and his claim should have been sustained. This question should have been submitted to the jury. Humphries v. Freeman, 22 Texas, 45; Weisiger v. Chisholm, 28 Texas, 780.

The court did instruct the jury among other things that to justify a verdict for plaintiff they must find that Thurber & Co. were at the time of the sale insolvent and that Le Page knew it. This was not the required charge or its equivalent. The vendor may be insolvent and yet may make a legal and valid conveyance of his property for the purpose of securing or paying his just debts. Ellis v. Valentine & Son, 65 Texas, 549.

Was the note of Le Page for $14,000 a valuable consideration, it having been shown that he was insolvent? If the note was negotiable commercial paper it was a valuable consideration, sufficient in that respect to support the sale. The burden of proof was upon the vendee, Le Page, to prove the negotiability of the note. The evidence does not disclose the fact and it can not be presumed. Tillman v. Heller, 78 Texas, 597.

But we think the note given in this case constituted a valuable consideration whether it was negotiable or not. The reason why a negotiable note is held to be a valuable consideration in such cases is that it is not subject to equities between the maker and the payee, and the holder can force its payment.

The note of Le Page was given for such value as the property sold might be worth, subject to existing liens, and especially subject to the chattel mortgage of O'Connor & Sullivan for $17,000, a larger amount than the Le Page note. It was contemplated at the time of the sale that the note was to be deposited with them for collection and that the proceeds should be applied to the payment of their lien, and at the same time the prop-

erty was turned over to him, and they agreed with him that when he paid his note they would relinquish the property to him free of their lien. If all this were done by the parties in good faith, in a suit by them against him, or by Thurber & Co. for their benefit, Le Page could not defeat a recovery upon the ground. of equities in his favor against Thurber & Co., but could be compelled to pay it for the benefit of the lien of O'Connor & Sullivan, just as he would if it were a negotiable note in the hands of an innocent holder. In such case it would be a valuable consideration for the purchase.

There are left then only the questions of fraud in the sale and his knowledge or constructive notice of the fraud to be determined, and these questions we have sufficiently discussed upon the assignments as presented. If the sale was simulated and was not intended to convey the property, but to protect it or what would be left of it after existing liens were satisfied, Le Page was not the owner and could not recover in this action; or if it was fraudulent, as before explained, he could not recover, but he could recover if he purchased in good faith for a valuable consideration without notice of the fraud.

Our conclusion is that the judgment of the court below should be reversed and the cause remanded because of errors herein pointed out.

*Reversed and remanded.*

Adopted February 10, 1891.

Motion for rehearing refused.