### EDWARD D. CHAMBERLAIN ET AL. V. K. M. PYBAS ET AL.

#### No. 6802.

1. **Certificate of Acknowledgment to Deed—Presumptions.**—A notarial certificate began: "The State of Texas, county of Tarrant.—Before me, a justice of the peace and ex officio notary public, personally appeared," etc., and closed, "Witness my hand and seal of office this the 18th day of September, 1880. [Seal] J. E. Murray, J. P. and ex. off. N. P." *Held*, such certificate is not deficient in not showing for what county the officer acted and was authorized to act. It shows that the act was done in Tarrant County, and it will be presumed that he acted in that county and within his jurisdiction. It will also be presumed that the notarial seal showed the county as is required by law.

2. **Possession by Tenant and Payment of Taxes.**—A defendant holding under a deed duly recorded allowed two sons to occupy 100 acres each. They did so, and paid the taxes. He occupied himself the balance of the land included within the lines set out in his deed. Other conditions for title under limitation of five years were established. *Held*, that the possession held and the payment of taxes by his sons under him inured to his benefit and perfected his title.

3. **Deed-Duly Recorded.**—Where land is the separate property of the husband, or is community property and not homestead, a defective acknowledgment of the wife who unnecessarily joined with her husband in the deed will not vitiate the record of such deed to injury of the vendee holding possession under it.

4. **Equitable Defense Under Plea of Not Guilty.**—In an action of trespass to try title the defendant may prove an equitable defense.

5. **Hearsay.**—A surveyor was allowed to testify that one Lewis had in his possession a land certificate issued to the heirs of H. P. Chamberlain; that Lewis claimed to own it, and had employed witness to locate it, and had paid him therefor. *Held*, that the testimony to Lewis' declarations was hearsay, and that the testimony given by the witness was not sufficient to raise the issue of ownership so as to require its submission to the jury.

6. **Possession and Claim to Land Certificate.**—The certificate being the mere evidence of a right to appropriate land, the mere possession of it is not evidence of title to the land in the possessor.

7. **Practice — Papers Taken by Jury.**—A leaf from a family Bible detached therefrom and made part of the answers of a witness testifying by depositions on the trial was separated from the depositions and was taken by the jury in their retirement. This should not have been permitted.

8. **Judgment in Supreme Court.**—Instance where the judgment below was affirmed as to part of the land in controversy and reversed as to another part.

APPEAL from Cooke.   Tried below before Hon. F. E. Piner.
The opinion states the case.

*Geo. F. Pendexter* and *Mathis & Lewis*, for appellants.—1.  The court erred in admitting in evidence the deed from M. A. and A. E. Cornelius and Henry A. and Cassie Lewis to K. M. Pybas, because of the defective acknowledgment of said deed for record by said H. A. and Cassie Lewis.

2.   The court erred in admitting the testimony of William Hudson that Charles Lewis claimed to own the certificate by virtue of which the land was patented to the heirs of H. P. Chamberlain, because such testimony was hearsay, and because it tended to establish an equitable defense inadmissible under the plea of not guilty.

3.  · The court erred in permitting the jury to take with them in their retirement the leaf from the family Bible of Sylvester Chamberlain, attached to the deposition of John Sage, and made a part of his answer, because said leaf was a part of the deposition and was explained by it; and because, detached from the same, it contained entries calculated to mislead the jury to plaintiffs' prejudice.  Rev. Stats., arts. 1303–1310; Pridgen v. Hill, 12 Texas, 374; Rawson v. Curtiss, 19 Ill., 455.

4.   It is error for the charge to present a hypothetical case not made by the evidence; a fortiori is it error to charge directly against the evidence in a way to preclude the jury from considering a party's right to recover in any event.   Leach v. Wilson Co., 68 Texas, 353; Altgelt v. Brister, 57 Texas, 432; Andrews v. Smithwick, 20 Texas, 111; Austin v. Talk, 20 Texas, 165.

5.   It is reversible error to submit to the jury a hypothetical case not raised by the testimony.   Blanton v. Mayes, 58 Texas, 422; Leach v. Wilson Co., 68 Texas, 353; Lee v. Yandell, 69 Texas, 34; Earle v. Thomas, 14 Texas, 583.

*Davis & Garnett*, for appellees.—1.  The deed was admissible, because the acknowledgment of Henry A. Lewis was in substantial compliance with the law, and his wife being an unnecessary party to the deed and having no interest in the land, any error in her acknowledgment was immaterial.   1· Dev. on Deeds, sec. 486; Livingston v. Ketelle, 41 Am. Dec., 166; Same Case, 1 Gilman, 116; Sidwell v. Birney, 69 Mo., 144.

2.   This deed was admissible to rebut the evidence of appellant Kate J. Chamberlain, and was admissible also upon the ground that appellants under their plea of five years limitation had a valid defense against Hunting S. Chamberlain, the grantee in this deed, and upon the ground that appellants had no right to recover the land as the naked legal owners, when the beneficial or real owner could not recover.

3.   The evidence of William Hudson tended strongly to show that Charles Lewis was the owner of the land certificate when located, and

was admissible; and the evidence that Charles Lewis was the owner of the certificate was such as to make it the duty of the court to submit that issue to the jury. Manchaca v. Field, 62 Texas, 140; Veramendi v. Hutchins, 48 Texas, 552; Gullett v. O'Connor, 54 Texas, 409; Shifflet v. Morelle, 68 Texas, 391.

GARRETT, PRESIDING JUDGE, *Section B.*—Edward D. Chamberlain and others, as heirs of H. P. Chamberlain, brought this suit in trespass to try title in the District Court of Cooke County, October 24, 1887, against the defendants K. M. Pybas, W. E. Pybas, Ben. Pybas, J. M. Hedges, and W. A. Russell, to recover one-third of a league of land situated in Cooke County, patented to the heirs of H. P. Chamberlain.

Defendants W. E. Pybas and Ben. Pybas disclaimed any interest in the land except as tenants of K. M. Pybas, whose answer they adopted; K. M. Pybas disclaimed title except as to 500 acres; J. M. Hedges disclaimed except as to 460 acres; and W. A. Russell disclaimed except as to 514 acres, which he claimed under two separate conveyances, one for 314 acres and another for 200 acres. Each of the defendants set out the metes and bounds of the particular tracts claimed by him. Defendants also pleaded not guilty and limitations of five years as to their several holdings.

Evidence was introduced by plaintiffs to show that the plaintiffs Edward D. Chamberlain and Jacob S. Chamberlain were brothers of H. P. Chamberlain; that Hannah M. C. Rucker was a sister; that Kate J. Chamberlain was the widow of Samuel M. Chamberlain, who was a brother, and that Francis D. Street, Kate M. McCready, and Henry B. and Albert M. Chamberlain were the children of Samuel M., the said Albert M. being a minor, who sued by his mother as next friend; and that the father and mother of H. P. Chamberlain were both dead. It appeared that there were other heirs not joined in the suit, and there was a brother, Hunting S. Chamberlain, who was also dead. If he left any heirs they were not parties to the suit as such, and it is not shown who they are.

Samuel M. Chamberlain and his brother Jonathan and his wife executed a deed dated July 27, 1853, to Hunting S. Chamberlain for the certificate by virtue of which the land in controversy was located.

The deed from Samuel M. to Hunting S. Chamberlain will prevent a recovery by Mrs. Kate S. Chamberlain and her children, since they claim under the husband and father Samuel M. This relieves the case of the disability of parties by reason of coverture or minority in considering the question of limitation.

It was clearly shown that the defendant J. M. Hedges has perfect title by limitation to the 460 acres claimed by him. As to K. M. Pybas two questions are presented.

1.   That raised by the first assignment of error, that the deed upon which he rests his claim from M. A. and A. E. Cornelius and Henry A. and Cassie Lewis, was improperly admitted in evidence, because of the defective acknowledgment of said deed for record by H. A. and Cassie Lewis.   It is an absolute deed for 500 acres of the land described by metes and bounds and contains covenants of general warranty.   It appeared from other evidence that the land was claimed by Mrs. Cornelius and Henry Lewis in their separate right as two of the six heirs of Charles Lewis.   So it was not necessary for Mrs. Lewis to sign the deed.   Her acknowledgment was not taken in the manner prescribed by law, and the certificate of acknowledgment with respect to her is fatally defective, as it does not show that the deed was explained to her. Ruleman v. Pritchett, 56 Texas, 482; Langton v. Marshall, 59 Texas, 296; Johnson v. Bryan, 62 Texas, 623.   But the objection that the certificate of acknowledgment does not show for what county the officer taking the acknowledgment had authority to act, nor of what county he was an officer, is not tenable, because it is shown by the certificate that it was made in Tarrant County, Texas, and it will be presumed that the officer acted in that county and that he acted within his jurisdiction.   It commenced:

"*The State of Texas, County of Tarrant.*—Before me, a justice of the peace and ex officio notary public, personally appeared," etc.

And was tested:

"Witness my hand and seal of office, this the 18th day of September, 1880.

[SEAL]                "J. E. MURRAY, J. P. and ex officio N. P."

No doubt the seal, although it is not copied in the record, also showed that the officer was a notary public in and for Tarrant County; but this was sufficiently shown by the certificate of the officer without copying the seal. Blythe v. Houston, 46 Texas, 79; Livingston v. Ketelle, 41 Am. Dec., 166; Sidwell v. Birney, 69 Mo., 144; 1 Dev. on Deeds, sec. 486.

2.   That the defendant K. M. Pybas had not claimed nor paid taxes on nor in any way asserted any interest in 200 acres of said land for five years.   This point is raised by the tenth assignment of error.   K. M. Pybas bought the land September 18, 1880, and his deed was recorded October 11, 1880.   As soon as he purchased the land he inclosed the entire 500 acres and remained in actual possession thereof, using and claiming the same and paying all taxes thereon up to the time of the trial.   But as to 200 acres his possession and payment of taxes was by his tenants W. E. and Ben. Pybas, who were his sons.   Soon after he bought the land he permitted his said sons each to occupy and take possession of 100 acres, with the agreement that they should build houses thereon and pay all taxes.   Each of them took possession of 100

acres under said agreement, and built and occupied a house on the tract designated for him and paid all taxes thereon. Pybas executed no deed to either of his said sons, nor did he give them the land, but considered them, as he testified, his tenants at will. From these facts it appears that the possession of the sons was the possession of K. M. Pybas by his tenants, and the payment of taxes was by him; and his title to the 500 acres was perfect by limitation.

W. A. Russell sustained his plea of limitation as to 314 acres; but as to the 200 acres described in the deed from J. W. and C. L. Spears to S. T. Gray, dated July 14, 1882, he failed to show limitation, as that deed was not recorded until March 28, 1884.

It remains, therefore, to consider the other questions presented by appellants in order to determine the case as to the 200 acres not held by limitation. Without referring specifically to the several remaining assignments of error, we will dispose of such of the questions presented as we deem material.

Certificate No. $\frac{3633}{2730}$ was issued by the Commissioner of the General Land Office to the heirs of H. P. Chamberlain, February 3, 1853. Chamberlain had died in 1838 at Galveston. The heirs of Charles Lewis claimed to own the land in controversy by inheritance from their father; there were six of them, and two of them, Mrs. Cornelius and H. A. Lewis, claimed also by a void tax deed. Defendants claim under H. A. Lewis and Mrs. Cornelius.

William Hudson, a witness in behalf of the defendants, testified with reference to the possession, location, and ownership of the certificate as follows: "I knew Charles Lewis in his lifetime. Before this certificate was located he lived in Henderson, Rusk County, Texas. I was well acquainted with him there before the location of this certificate. I located the certificate on the land in controversy for Charles Lewis. He had the certificate in his possession and claimed to own it, and employed me to locate it for him, and I located it on the land in controversy a year or two before the land was patented by virtue of said certificate. I had the land in controversy surveyed, and returned the field notes to Charles Lewis in Rusk County, where he then lived. He paid me for the location and survey and claimed to own the certificate. Charles Lewis died in 1869, and claimed to own the land during his lifetime. I never heard of any one claiming the land adversely to said Lewis or his heirs before this suit was instituted. I am well acquainted with the land in controversy, and I have lived in Gainesville, Cooke County, Texas, for about thirty years. H. A. Lewis is a son of Charles Lewis. Charles Lewis was a lawyer at the time I located the certificate for him, and was in partnership, I think, with Flanagan. It was the business of lawyers at that time to have lands located for clients who owned certificates. Of my own knowledge I do not know whether Lewis owned the Chamberlain certificate or not. He claimed to own it, and

employed me to locate it, which I did, and he paid me.	He lived some twelve or thirteen years after the land was patented.	I never heard of any proceeding by him or his heirs to have the title divested out of the Chamberlain heirs and vested in him.''

This is all the testimony there was as to the claim of Charles Lewis either to the certificate or to the land.	Plaintiffs objected to the admission of the testimony of Hudson that Lewis claimed to own the certificate by virtue of which the land was patented to the heirs of H. P. Chamberlain, because such testimony was hearsay, and because it tended to establish an equitable defense inadmissible under the plea of not guilty.	The second ground of objection is not well taken, for it is well settled that an equitable defense may be proved under a plea of not guilty.	But we are of the opinion that the evidence that Charles Lewis claimed to own the certificate was clearly hearsay, and should have been excluded on the objection of plaintiffs.	Nor do we think that the evidence of the witness Hudson, so far as it was competent, was sufficient to authorize the submission to the jury by the court of the question of the ownership of the certificate by said Lewis, as was done.	The certificate was the mere evidence of a right to appropriate land, and the mere possession of a muniment of title is not evidence of title in the possessor.	Shifflet v. Morelle, 68 Texas, 391.	There was no evidence of any act of ownership on the part of Lewis except that he procured Hudson to locate the certificate and paid him for it.	It was not shown that Lewis or his heirs ever paid taxes on the land or ever exercised any acts of ownership over it. There is not enough evidence in the record to warrant the finding of the jury that the land certificate had been sold to Charles Lewis; and it was improper to submit such an issue to them.

The court should not have permitted the jury to take with them in their retirement the leaf from the family Bible of Sylvester Chamberlain, the father of H. P. Chamberlain, which had been detached from the deposition of the witness John Sage.	This leaf purported to contain a record of the births and deaths of children of Sylvester Chamberlain, and opposite the names Hannah Maria Chamberlain and Samuel M. Chamberlain were memoranda showing that these children had died in infancy.	There was evidence showing and identifying the plaintiff Hannah Maria Rucker as the daughter of Sylvester Chamberlain, and showing that Samuel M. Chamberlain grew to manhood and was the husband of Kate M. Chamberlain and the father of her children.	So it will be readily seen how the possession of this record leaf from the Bible, unaccompanied by the deposition, could injure plaintiffs' case.	All of the depositions showing the heirship, and the names of plaintiffs, and their relationship to H. P. Chamberlain, were kept from the jury, still they were permitted to take out with them the leaf from the Bible which had been detached from the deposition to

which it was an exhibit. Written evidence may usually be taken out by the jury; but depositions are excepted, because the party whose case is sustained by depositions would have an improper advantage over him whose proofs were oral only. Rev. Stats., art. 1303; Pridgen v. Hill, 12 Texas, 374; Rawson v. Curtiss, 19 Ill., 485.

Notwithstanding the errors pointed out the jury could have rendered no other verdict as to the 500 acres claimed by defendant K. M. Pybas, the 460 acres claimed by the defendant Hedges, and 314 acres of the land claimed by the defendant Russell, and as to those tracts we recommend that the judgment of the court below be affirmed. But as to the 200 acres claimed by the defendant Russell, described in the deed from Spears and wife to Gray, the judgment should be reversed and the cause remanded.

*Reversed and remanded.*

Adopted June 23, 1891.