KEENON v. BURKHARDT et al.

(Court of Civil Appeals of Texas. Amarillo. Dec. 13, 1913. On Motion for Rehearing, Jan. 10, 1914.)

1. TRESPASS TO TRY TITLE (§ 35*)—PLEA OF NOT GUILTY—EVIDENCE—ADMISSIBILITY.

Under Rev. St. 1895, art. 5257, providing that under the plea of not guilty defendant in trespass to try title may show any lawful defense to the action, except limitations, he may prove under the plea of not guilty that he is a bona fide purchaser.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 50–52; Dec. Dig. § 35.*]

2. APPEAL AND ERROR (§ 931*)—HARMLESS ERROR — ERRONEOUS ADMISSION OF EVIDENCE.

Where a cause was tried by the court without a jury, and there was sufficient legal evidence to establish a fact, the court on appeal will presume that the trial court disregarded improper evidence to show the fact, and will not disturb the findings.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3728, 3762–3771; Dec. Dig. § 931.*]

3. TRESPASS TO TRY TITLE (§ 41*)—EVIDENCE—SUFFICIENCY.

In trespass to try title, evidence *held* to sustain a finding that the grantors in a deed under which defendant claimed were the same persons named as beneficiaries in the will of a testator, who was the common source of title.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 62, 63; Dec. Dig. § 41.*]

4. DEATH (§ 4*)—EVIDENCE—PRESUMPTIONS.

The probating and recording in Texas of a foreign will devising land to the grantors in a deed under which defendants in trespass to try title claimed title was presumptive evidence of the death of the testator, so as to support the title under the deed.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 5, 6; Dec. Dig. § 4.*]

5. WILLS (§ 426*)—FOREIGN WILLS—PROBATE—PASSING OF TITLE.

Where a foreign will properly probated has been duly recorded, as required by Rev. Civ. St. 1911, art. 7875, the title to the property of testator passes under article 7877 to the devisees, and no proof of the death of testator, heirship, or any other thing than to establish the identity of the devisees is necessary, except

in case of a contest within four years, under article 7875.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 915; Dec. Dig. § 426.*]

**6. VENDOR AND PURCHASER (§ 233*)—BONA FIDE PURCHASER — FAILURE TO RECORD — PURCHASER FROM HEIRS.**

An innocent purchaser from heirs of a deceased owner may, where he pays full value, hold the land against an unrecorded deed executed by decedent.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 563–566; Dec. Dig. § 233.*]

**7. VENDOR AND PURCHASER (§ 223*)—BONA FIDE PURCHASER—NOTICE.**

Where a deed was prepared and accepted by the grantee under the impression that it contained a covenant of warranty, the omission from the deed of such a covenant was only a circumstance on the issue of the grantee's claim of innocent purchaser.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 467, 468; Dec. Dig. § 223.*]

**8. VENDOR AND PURCHASER (§ 229*)—FOREIGN WILLS—REGISTRATION—EFFECT.**

Since the act which provides for the recording of a foreign will does not include the registration of the schedule of property, the failure to file the schedule does not put a purchaser from the devisees on inquiry, and where he purchases without notice of a prior unrecorded deed executed by testator, and pays full value, he is a bona fide purchaser.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 477–494; Dec. Dig. § 229.*]

**9. VENDOR AND PURCHASER (§ 235*)—BONA FIDE PURCHASER—CONSIDERATION.**

The giving of negotiable notes as a consideration for a conveyance of real estate is such payment as supports a title of one claiming to be a bona fide purchaser.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 567–569, 571–576; Dec. Dig. § 235.*]

Appeal from District Court, Dallam County; D. B. Hill, Judge.

Action by Ellen Keenon against C. F. Burkhardt and others. From a judgment for defendants, plaintiff appeals. Affirmed.

Tatum & Tatum, of Dalhart, for appellant. Moore, Harrington & Powell, of Dalhart, for appellees.

HALL, J. This is an action in trespass to try title, brought by appellant against C. F. Burkhardt, W. H. Jackson, D. B. Coleman, and W. M. Stewart, in the district court of Dallam county, for the recovery of a certain section of land. The original petition was filed the 12th day of August, 1911. On the 5th day of August, 1912, the appellees answered by general denial and a plea of not guilty. There was a trial before the court, resulting in a judgment which recites that the defendants were purchasers for a valuable consideration in good faith, without notice of the land in controversy, and decreed that the plaintiff take nothing by her suit, and that the defendants be discharged with their costs.

There was an agreement of counsel that Herman Greve was the common source. The appellant introduced in evidence warranty deed from Herman Greve and wife, Mary Greve, conveying the land in question. This intrument was dated April 11, 1878, was defectively acknowledged, and was filed for record the 26th day of September, 1910, and duly recorded on the 28th day of September, 1910, in the deed records of Dallam county. She further introduced a correction deed from the same grantors, conveying the same land, dated November 24, 1880, filed for record September, 26, 1910, and recorded on the 28th day of September, 1910. The acknowledgment is in statutory form. The appellees, in addition to the agreement as to common source mentioned above, introduced the following documentary evidence:

(1) A deed from Josephine Oppenheim and husband, Ansel Oppenheim, Sarah W. Kalman and husband, Arnold Kalman, Sophia Greve Kenyon and husband, George M. Kenyon, and Doretta Dupuy and husband, Raymond Dupuy, to E. S. Collins, conveying the same land and bearing date January 22, 1909. This instrument was filed for record in Hartley county, February 22, 1909, and duly recorded and was filed for record in Dallam county on February 24, 1909. This instrument contains no warranty clause, and has the following granting clauses: "Have granted, sold and conveyed, and by these presents do grant, sell and convey unto the said E. S. Collins, all that certain tract or parcel of land lying and being situated in the counties of Dallam and Hartley, in the state of Texas, and more particularly described as being all of section No. 41, in block No. 2, surveyed by virtue of certificate 372, issued to Brooks & Burleson, and patented to John W. Maddox and brother, assignees of said Brooks & Burleson, and by said Maddox and brother conveyed to said Herman Greve." The habendum clause is as follows: "To have and to hold the above-described premises together with all and singular the rights and appurtenances thereto in any wise belonging unto the said E. S. Collins, his heirs and assigns forever." In this conveyance the vendor's lien is expressly retained to secure the payment of four notes of even date therewith, executed by the grantee Collins, and payable as follows: One on or before one year from date, payable to the order of Doretta Dupuy, in the sum of $375, one on or before one year from date, payable to the order of Josephine Oppenheim, in the sum of $375, and one on or before two years from date, payable to Sophia Greve Kenyon, in the sum of $375, and one on or before two years from date, payable to the order of Sarah W. Kalman for $375. Said notes bear interest at the rate of 8 per cent. per annum, interest payable annually.

(2) Release of the vendor's lien from Arnold Kalman to E. S. Collins, dated April 30, 1909, filed for record May 21, 1909, and

duly recorded in Dallam county, reciting that the grantor is the owner of all the notes described above, and releases the lien retained in the deed to secure the payment thereof.

(3) A deed from E. S. Collins to R. S. Rogers, dated April 14, 1909, and duly recorded in the deed records of Hartley county and in Dallam county, conveying the land in suit, and expressly retaining a vendor's lien to secure the payment of five notes of even date with the deed. The first note being for $1,500, due on or before 90 days, with interest at 8 per cent., and the remaining four notes for $975, due in one, two, three, and four years, respectively, with interest at 6 per cent. per annum from date.

(4) Release of the vendor's lien from Collins to Rogers, dated May 11, 1909, filed for record in Hartley county May 22, 1909, acknowledging the payment of the $1,500 note, described in the foregoing conveyance.

(5) Warranty deed from R. S. Rogers to appellees Burkhardt, Jackson, Coleman, and Stewart, dated May 7, 1909, filed for record May, 22, 1909, and duly recorded in both Hartley and Dallam counties. This deed recites the consideration of $5,700, $3,500 cash, and three notes, executed by the grantees, in the sum of $733.33 each, payable to R. S. Rogers, with 6 per cent. interest, retaining a vendor's lien on the land in controversy to secure their payment, and due one, two, and three years after date, respectively. These notes are made subject to four notes executed by Rogers to Collins.

(6) The last will and testament of Herman Greve and probate thereof. Clause 5th of the will bequeaths unto his wife, Mary Greve, "an equal undivided one-third part of all the rest and residue of my real estate and personal property of every nature, kind and description wheresoever situated." This is made upon condition that she accepts under the will, in lieu of any interest she may have under the laws of the state of Minnesota, or of any other jurisdiction where any of the property may be situated. The sixth clause is as follows: "All the rest and residue of my estate, real and personal, of every nature, kind and description, wheresoever situated, whether in the state of Minnesota, Iowa, Texas or Wisconsin, or in the territory of Dakota or wheresoever same may be situated, I give, devise and bequeath unto my four children Josephine Oppenheim, Sarah W. Kalman, Doretta and Sophia Greve, to be equally divided between them, share and share alike. To have and to hold the same unto them, their heirs and assigns forever. If any one or more of the said daughters shall have deceased before my own death, without legal issue, then the share of such child shall be equally divided between the survivors of them, share and share alike, and unto their heirs and assigns forever." The seventh clause appoints his two sons-in-law, Ansel Oppenheim and Arnold Kalman, as executors and trustees, with the right of the survivor to nominate a successor in the event one should die, said appointment to be with the written approval of the testator's wife and children. The executors would act without bond. Ansel Oppenheim was given full power to sell and convey, either alone or jointly, with his coexecutor, any and all real estate wherever situated, either for cash or upon credit, with or without covenants of warranty, for the purpose of paying debts or making investments or reinvestments at his option and discretion.

(7) A certificate from the probate court of Ramsey county, Minn., duly certified, dated November 18, 1885, and showing the date of the will to be the 21st day of November, 1884. A certified copy of the will and proceedings probating it were filed for record in Hartley county, December 6, 1888, and in Dallam county soon thereafter.

(8) The will of Marie Greve and probate thereof, filed for record February 23, 1909, in Hartley county, and March 22, 1909, in Dallam county. The fourth clause of this will gives to testatrix's "children Josephine Oppenheim, wife of Ansel Oppenheim, Sarah W. Kalman, wife of Arnold Kalman, Doretta Dupuy, wife of Raymond Dupuy, and Sophia Greve," all of the testatrix's real and personal property wherever situated, to be equally divided between them, and nominates the two daughters, Doretta and Sophia, or the survivor of them to execute it, and provides that they shall not be required to give bond. The certificate of probate from Ramsey county, Minn., recites that the will dated May 18, 1895, together with the codicil, was duly proved and recorded. and decrees as follows: "It is further ordered, adjudged, and decreed that all and singular of the real estate of decedent above described be and the same is hereby assigned to and vested in the said Josephine Oppenheim, Sarah Kalman, Doretta Dupuy, and Sophia Greve Kenyon, in equal shares, as tenants in common, to have and to hold the same unto them, their heirs and assigns forever. It is further ordered, adjudged, and decreed that all other estate of the decedent not herein particularly described, whether the same be real, personal, or mixed, and wheresoever same may be situated, be and the same is hereby assigned to and vested in the said Josephine Oppenheim, Sarah W. Kalman, Doretta Dupuy, and Sophia Greve Kenyon, in equal shares."

The appellees testified, in substance, as follows: E. S. Collins: "I bought said section of land. In payment for same I gave my notes as follows: Four notes for $375 each, total $1,500, and the same was paid in cash by me at the time I sold the land or soon after. I had no knowledge at the time I purchased the land that the plaintiff was claiming the land. The parties who I bought the land from did not refuse to give me a warranty deed. I did not pay any cash, but expected to pay the notes I gave in payment for the land when they fell due, whether I sold the

land or not. It is not a fact that I believed the title was not good. It is not a fact that the parties refused to give me a warranty deed. It is my recollection that I had the deed prepared here, and sent to these parties for their signatures. It is my recollection that I paid these notes after I gave Mr. Rogers the deed to the land. It is not a fact that the parties I got the deed from did not give me a warranty deed." The other appellees, except Burkhardt, testified that they had no knowledge from any source whatever of the plaintiff's claim to the land. It was shown that at the time Burkhardt, Jackson, Coleman, and Stewart purchased from Rogers, they procured an abstract of the land, which was examined by an attorney at Dalhart, Tex., and at Effingham, Ill., and that both attorneys approved the title, and that in the purchase they assumed the payment of the four notes for $975 each, described above. In rebuttal appellant offered an inventory of property filed in the probate court of Ramsey county, Minn., purporting to be a schedule filed by the executors with their petition for discharge and final account on the 9th of November, 1886. With this inventory there was introduced orders of the probate court of Ramsey county, Minn., dated January 5, 1887, showing that the executors had filed due proof of the publication of the order for the hearing of said account and petition, and allowed the same, and postponing further the consideration of the petition for the assignment of said estate.

Further orders introduced contain this recital: "And it further appearing to the satisfaction of the court that the said deceased left surviving him Marie Greve, his widow, and Josephine Oppenheim (the wife of Ansel Oppenheim) and Sarah Kalman (the wife of Arnold Kalman), Doretta Greve, and Sophia Greve, his only children. That said four children are all of lawful age; that they all reside in said Ramsey county, and that said deceased left surviving him no other children nor the child nor children of any deceased child, and that the said Marie Greve, Josephine Oppenheim, Sarah Kalman, Doretta Greve, and Sophia Greve, are the sole heirs at law of the said deceased, and the sole legatees and devisees named in the said last will and testament." The order then distributes the real estate in accordance with the will of Herman Greve. Appellant then offered the following note of the abstractor in the abstract, identified as one furnished appellees, and examined by their attorneys before purchasing the land: "There are long schedules of property attached to and following the foregoing proceedings, as well as the manner of the division of said property under the provision of said will, but, the property herein abstracted being neither mentioned in either schedule or division, and not being especially set out in any manner, the said schedules are not deemed pertinent to this abstract."

[1] The appellants first, second, third, fourth, fifth, sixth, eighth, ninth, and thirteenth assignments of error are all predicated upon the failure and refusal of the court to hold that appellees were not entitled to introduce evidence upon the issue of bona fide purchasers of the land because their only pleading consisted of a general denial and plea of not guilty. The case of North v. Coughran, 49 Tex. Civ. App. 101, 108 S. W. 165, decided by the Court of Civil Appeals, holds that in trespass to try title defendant may prove under a plea of not guilty that he is an innocent purchaser. This is the only case we have been able to find squarely upon this question. R. S. 1895, art. 5257, provides that under the plea of not guilty the defendant may give any evidence in lawful defense to the action except the defense of limitation. McKamey v. Thorp, 61 Tex. 648. These assignments are overruled.

[2] Under the seventh assignment, appellant complains of the action of the court in permitting the deed from Josephine Oppenheim and others to be introduced in evidence, and especially the recital that the grantors were sole heirs of Herman Greve and Mary Greve, deceased, because it was incompetent to prove that the grantors were heirs of either Herman or Mary Greve, because the recitation was a conclusion, the ex parte statement, and not binding upon any one of the several parties to the instrument and their privies. Since the trial was before the court, and there was other evidence tending to establish that these parties were the heirs of Herman and Mary Greve, deceased, we will not presume that the court considered this testimony to prove heirship or death of Herman Greve and his wife. Reference to the record discloses that the court so qualified the bill.

[3] It is insisted under the tenth assignment that, the defendants having endeavored to prove themselves to be bona fide purchasers through the sole heirs of Herman and Mary Greve, and having failed to show that the grantors in the conveyance to them were the only children surviving Herman and Mary Greve, there being no evidence to identify Sophia Greve Kenyon as the Sophia Greve named in the wills and probate proceedings, appellees at most would have been entitled to only three-fourths of the land in controversy, and the plaintiff entitled to one-fourth. The judgment in the probate proceedings recites that the parties named are the only children and heirs of Herman and Mary Greve, and the question of the personal identity of Sophia Greve Kenyon, with the Sophia Greve named in the wills and probate proceedings, was a question of fact, to be determined by the court from all the evidence before him. We think the record contained sufficient testimony to sustain him in his finding.

[4] It is contended under the twelfth assignment that there is no evidence in the

record of the death of Herman and Mary Greve, or either of them. We think that the probate proceedings and the fact that the wills executed by Herman Greve and his wife were probated and duly recorded in Texas show by presumption, if not directly, their death.

[5] And articles 7875 to 7878, Rev. Civ. St. 1911, provide for the record of wills probated in a foreign jurisdiction, and that such record shall be valid and effectual as a deed of conveyance of the property, and when so recorded shall have the same force and effect as the record of deeds or other conveyances to land from the time when such instrument was delivered to such clerk to be recorded. When it was shown that the foreign will properly probated had been duly recorded as required by article 7875, then under article 7877 the title to the property of the testators rested in the devisees in fee simple, and no proof of any conditions precedent was required. The statute was, we think, intended to relieve them of the burden of proving the death of the testator, heirship, or anything further than to establish their identity, unless in the event of a contest within four years under article 7875.

[6] That Collins paid value is uncontroverted. If so, he was an innocent purchaser from the heirs, and could hold the land against the unrecorded deed of their ancestor. Taylor v. Harrison, 47 Tex. 456, 26 Am. Rep. 304; Slayton v. Singleton, 72 Tex. 209, 9 S. W. 876; Ryan v. T. & P. Ry. Co., 64 Tex. 239; Meyer v. Hale, 23 S. W. 990; Holmes v. Johns, 56 Tex. 41. In the last case it is said: "The deed from Stewart to Hancock was not a mere quitclaim deed. It purported to convey the land, and not merely his right, title or claim to it. It contained a special warranty, it is true, but that warranty was against all the world except the government. It is not perceived why the defendants could not claim under it as an innocent purchaser, if the other incidents to support that claim existed." In Richerson v. Moody, 17 Tex. Civ. App. 67, 42 S. W. 317, it was held that where a purchaser claims under a deed containing no warranty, information that the land is the homestead of a person other than his grantor is sufficient to put such purchaser upon inquiry.

[7] The deed in the instant case conveys the land, and not the interest of the heirs therein, to Collins, but contains no covenant of warranty. Collins' uncontradicted testimony shows that he had the deed prepared, and was under the impression that it contained the covenant of warranty. Hence we conclude that the omission from the conveyance of such covenant was not because the grantors refused to warrant the title. It is held in the Richerson Case that a deed which contains no warranty is not controlling but can be considered as a circumstance only on the issue of the vendee's claim of innocent purchaser.

[8] Appellant insists that the failure of the inventory of property filed by the executors under the will of Herman Greve to show that the land in question was part of the property of the estate was a sufficient fact to put appellees upon inquiry. The act which provides for the record of a foreign will does not include the registration of the schedule of property. Filing the schedule was merely the act of the executor in part performance of his duties. It was no part of the proceedings relating to the probate of the will and tended in no way to establish the validity thereof. Since it was not an instrument required or permitted by the statute to be recorded it was not constructive notice to appellee of anything, and no actual notice has been shown. Burck v. Taylor, 152 U. S. 651, 14 Sup. Ct. 696, 38 L. Ed. 585.

[9] It has been frequently held in this state, and the rule is now established, that the giving of negotiable notes as consideration for the conveyance of real estate is such payment as will support the title of one claiming to be a bona fide purchaser. Dodd v. Gaines, 82 Tex. 429, 18 S. W. 618; La Page v. Slade, 79 Tex. 473, 15 S. W. 496; Tillman v. Heller, 78 Tex. 597, 14 S. W. 700, 11 L. R. A. 628, 22 Am. St. Rep. 77; Watkins v. Spoull, 8 Tex. Civ. App. 427, 28 S. W. 356; Perkins v. Frank, 64 S. W. 236; Whittaker v. McWhorter, 129 S. W. 370.

What is here said disposes of appellant's remaining assignments of error, and the judgment is affirmed.

## On Motion for Rehearing.

In an exhaustive motion for rehearing, appellant first insists that we erred in holding that the defense of bona fide purchaser was admissible under a plea of not guilty, because the statute says that any lawful defense may be proven under the plea of not guilty, and the defense of bona fide purchaser is purely an equitable one. In addition to the case cited in the original opinion, we refer appellant to the holding of the Supreme Court in Kauffman v. Brown, 83 Tex. 41, 18 S. W. 425, and Chamberlain v. Pybas, 81 Tex. 511, 17 S. W. 50.

We have carefully reviewed the various grounds set up in the motion for rehearing, and are confirmed in our opinion that the original disposition of the case is correct.

The motion for rehearing is overruled.