TEXAS TRAM AND LUMBER COMPANY V. MARY E. GWIN ET AL.

Decided February 11, 1902.

**1.—Deed—Presumption—Issue and Charge.**

Evidence showing a claim to land not accompanied by possession for sixty years by one party, and nonclaim for the same time under the adverse title, held to present no issue as to presumption of a deed to support the claim, and to justify a refusal of instructions as to such presumption, the true question being whether a conveyance was established by circumstantial evidence.

**2.—Same—Evidence of Lost Deed Insufficient.**

Evidence held to warrant a finding that a deed, sought to be established by circumstantial evidence, was not so established.

**3.—Same—Issue Not Raised.**

Where there was evidence showing a deed, but not fixing its date, this did not warrant the submission of the issue as to whether it was made prior to another deed by the same grantor to another person.

**4.—Same—Administrator's Sale.**

Evidence held not to authorize the submission of an issue as to a sale by an administrator of land not inventoried or mentioned in the proceedings of the probate court relating to the estate.

**5.—Community Property—Stale Demand.**

The claim of the surviving wife in the community property is not obnoxious to the objection of stale demand.

**6.—Evidence—Indorsement—Protocol.**

An indorsement upon the protocol of an original grant, giving the name of a different grantee from the one mentioned in the instrument, is not admissible in evidence.

**7.—Deed—Evidence—Trespass to Try Title.**

Where the evidence offered to show the existence of a deed from the original grantee to one under whom defendant claimed did not fix its date as prior to the deed by such original grantee to one whose title was held by plaintiff, it was not admissible.

**8.—Innocent Purchaser—Notice—Recitals in Chain of Title.**

A party charged by the recitals in his own chain of title with notice of an adverse title can not be an innocent purchaser as to such latter title.

**9.—Trespass to Try Title—Payment of Taxes—Nonclaim.**

Evidence that plaintiffs in trespass to try title had not, since the filing of their suit, paid taxes on the land, was not admissible to show nonclaim as evidence of title in defendant.

**10.—Deed—Lost Instrument—Evidence.**

An unsigned memorandum of land conveyances, without date or authentication, found among the papers of a remote grantor of the defendant, was not admissible as evidence to show the existence of a deed such as was mentioned therein.

Vol. 29 Civil—1.

11.—Appeal—Conclusions of Fact.

Where a motion for additional conclusions of fact calls merely for a statement of the evidence received at the trial and of matters that were offered as evidence and rejected by the court, it should be overruled, since such matters are of record in the bills of exceptions, and it is not necessary that they appear in the conclusions of fact.

Appeal from Jasper. Tried below before Hon. Stephen P. West.

*Hill & Hill* and *J. T. Beaty,* for appellant.

*H. C. Howell,* for Mary E. Gwin.

*Geo. C. Greer, G. B. Wood,* and *K. B. Seale,* for intervener.

GARRETT, CHIEF JUSTICE.—This was an action of trespass to try title brought in the District Court of Jasper County, August 26, 1896, by Mary E. Gwin against the Texas Tram and Lumber Company for the recovery of an undivided one-half interest in a league of land situated in Jasper County granted to Enrique (Henry) Webb by the Mexican government as a colonist. The plaintiff claimed title as the wife of Wm. G. Logan through a deed executed by Henry Webb to John K. Allen and Wm. G. Logan, March 8, 1836, during the marriage. Logan died April 27, 1836, without issue. On September 6, 1898, the appellees B. Helm and others intervened in the suit and claimed one-half of the interest sued for by the plaintiff as collateral heirs of Logan. The defendant claimed title to the entire league under Allen, and the case was submitted to the jury upon the issue of whether or not Logan ever conveyed the land to A. C. and J. K. Allen, who were partners in the acquisition of lands, or to either of them. There was judgment in favor of the plaintiff and interveners. This is the second appeal. On the first appeal the case was transferred to the Fourth District and the judgment of the lower court was reversed and the cause remanded for another trial with an opinion appearing in 52 Southwestern Reporter, 110. Several of the questions presented and decided on the first appeal are now again presented. They are regarded as settled for this court on this appeal, and will be passed on so that they may be preserved for presentation to the Supreme Court should the appellant desire to do so.

The land in controversy was granted to Enrique (Henry) Webb, November 6, 1835. On March 8, 1836, Henry Webb executed a deed of conveyance of the entire league to John K. Allen and W. G. Logan by a notorial act under the civil law, in the Spanish language, at Nacogdoches, Texas, which recited that the parties "came and appeared present in their own proper person." The protocol was found among the archives of the office of the county clerk at Nacogdoches, and was in evidence on the trial below. W. G. Logan and the plaintiff, Mary E. Gwin, were married September 7, 1830. Logan died April 27, 1836, without issue. His widow, the plaintiff, was married to Wm. M. Gwin,

March 23, 1837. Wm. M. Gwin died September 3, 1885. At the time of the death of W. G. Logan the plaintiff was with her father in Kentucky and was never afterward in Texas, and never had any knowledge of the land in the controversy or of any title or claim that she or W. G. Logan had thereto until a year or two before the filing of the suit. The interveners were shown to be the heirs of W. G. Logan. None of them ever resided in Texas and had no knowledge of the land, nor that they had any right thereto, until not long before their suit was brought. The defendant deraigned title from John K. Allen. It was shown that John K. Allen died in 1838 and the land was inventoried as a part of his estate, administered upon in Harrisburg (now Harris) County; also that he and his brother A. C. Allen had been general partners under the several names of A. C. & J. K. Allen, J. K. Allen, and A. C. Allen, and were equally interested in all property possessed. On May 26, 1841, A. C. Allen conveyed the Henry Webb league of land to John Darrington in trust for the sole and separate use of Billups Gayle, his heirs or legal representatives. This deed was signed "Augustus C. Allen by his attorney in fact, James S. Holman." It purports to have been executed in White County, Alabama, but was acknowledged by A. C. Allen in person, June 23, 1843, before the chief justice of Harris County, Texas. Billups Gayle conveyed the eastern half of the league to A. B. Jones, by deed dated March 15, 1846, and recorded in Jasper County April 6, 1893. This deed in describing the land contains the following recital: "The same being the eastern half of a league of land granted by the Mexican government to Henrique Webb on the 6th day of November, 1835, and deeded by the said Henrique Webb to John K. Allen and William G. Logan on the 8th day of March, 1836, and by the said Logan and Allen deeded to this vendor in the city of Mobile, State of Alabama, on the —— day of ————, A. D., 1842, and for a more perfect exhibit reference is made to said titles." The title of A. B. Jones passed by mesne conveyances to John S. Sydnor and John N. Rose, the above recital being repeated in the next subsequent deed. The defendant deraigns title to the half league from Sydnor by deed from Annie E. Sydnor to the Tram and Lumber Company, dated September 29, 1881. It does not appear how the title of Rose was ever divested. On February 1, 1857, the heirs of Billups Gayle conveyed the remaining half of the league to Francis Hoskins by a deed reciting the deed from A. C. Allen by James S. Holman as attorney in fact, to J. Darrington in trust for Billups Gayle. This title passed by mesne conveyances and vested in the Tram and Lumber Company June 28, 1882. By an amendment of its charter the Tram and Lumber Company became the Texas Tram and Lumber Company. The defendant put in evidence a contract entered into between John K. Allen and Wm. G. Logan of the first part, and A. A. Halsey, Wm. M. Gwin, and others of the second part, for the acquisition of colonists' lands in Texas, by which Halsey and his associates agreed to advance money to the Allens and Logan with which they were to pay the government dues and other expenses of obtaining the titles

of the colonists for the grants made to them for one-half of the land; the land so acquired to be equally divided between the parties of the first and second part. An agreement between John K. Allen and W. G. Logan was also shown by which for personal attention Allen was to receive two-thirds of their one-half. These contracts were dated August 24, and October 8, 1835, respectively. The estate of Wm. G. Logan was administered upon in Nacogdoches County by Henry Raguet. An inventory was made in the estate November 22, 1836, but no part of the Webb league was inventoried as property of the estate. An additional inventory was made in 1849; but the inventory did not mention the Webb land. On October 14, 1835, Wm. G. Logan made a written acknowledgment that "Henry Raguet is an equal owner with me in all interests and claims I have in lands in Texas, except my headright league on Trinity River. The various interests I have will be fully explained by reference to the contract and documents left in his, the said Raguet's, hands." A similar acknowledgment was made on October 13, 1835, as to a mercantile business conducted by them at Nacogdoches. These instruments appear in the petition in the suit thereinafter mentioned. Papers coming from the control of A. C. Allen were put in evidence to show dealings under the Halsey contract, and inferentially that the Allens claimed the land under that contract. Also letters in which this land was mentioned. Two receipts were also put in evidence by the defendant signed by John K. Allen for A. C. & J. K. Allen. One of them acknowledges full settlement July 3, 1838, from H. Raguet, administrator of W. G. Logan's estate, of all land transactions with them; and the other, dated June 30, 1838, is the statement of an account for money advanced by the Allens for the use of Logan, the principal items of which were for these land purchases, stating what they were, the Webb land not being included. One of the items is for "one-third of exchange on draft received of Gwin." Receipt of full payment is acknowledged. Also from the Allen papers a receipt dated July 18, 1838, at Zavala, by which J. M. Sharp states that he has received from John K. Allen titles to six leagues granted to persons named, among whom are Enrique Webb, all to be recorded in the county clerk's office. There is an indorsement on this receipt that the titles called for in it have been returned.

October 1, 1855, the plaintiff and her husband and heirs of Wm. G. Logan brought a suit in the District Court of Nacogdoches County against Henry Raguet and others for the cancellation of certain transfers of land made by Raguet, alleging also that he had made void conveyances of land as administrator of the estate of W. G. Logan. He was charged with fraud in seizing and converting the estate to his own use. This suit pended until July, 1861, when it was compromised and settled. Plaintiffs withdrew all charges of fraud and malfeasance, and there was a consent judgment vesting title in Raguet to certain lands and moneys and for the partition of other lands, and also declaring valid all sales of lands made by Raguet as administrator. The Henry

Webb league is not included in the decree. There were subsequently a number of suits for the portion of lands in other counties between the plaintiff and heirs of W. G. Logan, but in none of them was the Henry Webb league included. The administration of the estate was finally closed in 1866.

Neither the Webb league nor any part of it was ever inventoried as a part of the estate of Logan. Raguet rendered and paid taxes on lands belonging to said estate, but not on the Webb lands. Neither the plaintiff nor any of the interveners have ever paid any taxes thereon. The appellant has paid all the taxes thereon since 1882. The land was not shown to have been in the actual possession of anyone. The records of Jasper County were burned in the year 1849. The records and indexes of Nacogdoches County are still preserved. Fruitless search for a deed from W. G. Logan to A. C. & J. K. Allen or either was shown to have been made by the agents of the appellant. At the date of the execution of the deed from Henry Webb to John K. Allen and Wm. G. Logan, March 8, 1836, Wm. G. Logan was in the city of New Orleans, and was never afterwards in Texas. A. C. Allen was probably in New Orleans about the same time. Logan died in Natchitoches, Louisiana, on his way back to Texas.

By an appropriate assignment of error the appellant assails the verdict of the jury as contrary to the law and unsupported by the evidence. The assignment is as follows:

"The trial court erred in not granting appellant a new trial, because the verdict of the jury is contrary to the law and unsupported by the evidence. The evidence shows that for over sixty years the Texas Tram and Lumber Company, and those under whom it claims title to the Webb league of land, have openly and notoriously asserted title to the said land, both by recorded deeds and the probate records of Harris County, Texas, in the succession of John K. Allen, deceased, and other acts of open notorious claim by the Texas Tram and Lumber Company, and those in its chain of title, and from it claims, among which open claim is that of paying taxes on this land from the organization of this government, and that the records show both in Jasper County and in the Comptroller's office of Texas, that neither plaintiff Mary E. Gwin nor the interveners, or any one of them, have ever rendered or paid taxes on this league of land, or any part of it; and further, that Henry Raguet, the administrator of the estate of Wm. G. Logan, deceased, as shown by the tax rolls of the Comptroller's office of this State, rendered for taxes the land of Wm. G. Logan in this State for 1850, 1851, 1852, 1853, 1854, and 1855, and in such renditions said administrator did not include the Henry Webb league of land, or any part of it. The entire evidence showing nonclaim of plaintiff Mary E. Gwin and interveners from the year 1836 up to the time of filing of this suit as to the Henry Webb league of land. Not only this, but plaintiff Mary E. Gwin and her husband (who was connected with A. C. & J. K. Allen and Wm. G. Logan in large land transactions in Texas) and interveners have litigated the

issues as to the land owned by them and by others with them in Texas, having in said suits in Nacogdoches County, Wood County, and Smith County partitioned by decrees of courts their lands in various counties in Texas, Henry Raguet being a party to the suit in Nacogdoches County. All this taking place since 1860 and pending the administration of the estate of Wm. G. Logan by Henry Raguet, administrator, in Nacogdoches County, prior to 1860. In all these suits no claim was made to the Henry Webb league of land or any part of it by Mary E. Gwin or her husband, Wm. M. Gwin, for her, with knowledge of the fact, or by any of the heirs of Wm. G. Logan. Plaintiff Mary E. Gwin and her said husband, by powers of attorney made in 1881 and 1882, authorized one John McDougal of New Orleans, long known to them, to recover any land to which they were entitled in Texas and in Arkansas. These powers of attorney were recorded in many counties in eastern Texas.— Jefferson, Trinity, Hardin, and others. By the terms of said powers of attorney McDougal got one-half interest in the land he recovered, but he was inhibited from selling and conveying by warranty deed for Mary E. Gwin and her husband, and to bring no suits subjecting them to cost; the powers of attorney being recorded for about twenty years. Up to the institution of this suit neither Mary E. Gwin, nor interveners, nor John McDougal, have instituted suit or proceeding to recover the Webb land, though during that time same was claimed by appellant and those through whom they claim by recorded title. This showing nonclaim in the part of Mary E. Gwin and interveners."

On the other hand, there is the deed from Webb to Allen and Logan found in the proper archive, the legal effect of which is to vest title to one-half of the land to Wm. G. Logan. Although it might have come within the Halsey contract, it may have been so conveyed to vest the title where it beneficially belonged upon a settlement of the interest as part of the lands were acquired. It appears very conclusively that neither the plaintiff nor any of the interveners ever knew anything about the Webb league or of the deed or of any right that Logan had to the land or of any interest that they had therein. It is reasonably certain that Raguet, the administrator, knew nothing of the deed to Allen and Logan or of any claim that Logan had to the land, or he would have inventoried it as an asset of the estate. Want of knowledge sufficiently explains the failure of those who had the right to assert Logan's title to claim the land. The evidence points to the fact that John K. Allen, and after him A. C. Allen, had possession of the testimonio, which, however, was not produced, and being a joint owner of the land it was properly in his possession, hence the possession of the title papers loses much of its force as evidence of claim to the entire league. It is true that the land is found upon the inventory of the estate of John K. Allen, but that fact may be due to the fact of the possession of the title papers by him and that he owned an interest in it. The most pronounced act hostile to the title of Logan was the sale of the league by A. C. Allen to Billups Gayle. This is inconsistent with any right that the plaintiff

or the heirs of Logan may have had. Yet A. C. Allen may not have owned the interest of Logan in the land and may have undertaken to convey it without the right to do so. The jury have so found, and we can not say that their verdict is not supported by the evidence. We therefore conclude that no sale or conveyance of his interest in the Webb league to A. C. & J. K. Allen, or either of them, was ever made by Logan.

As was held by the court on the former appeal, the doctrine of presumption of a grant does not apply to this case. The question is, was there a conveyance? and the proof of a conveyance depends upon circumstantial evidence. In this State the doctrine of presumption of a deed is not carried to the length that it has been in some other jurisdictions. Bounds v. Little, 75 Texas, 320; Walker v. Caradine, 78 Texas, 489; Herndon v. Vick, 89 Texas, 475. Even where the doctrine prevails it can only be indulged in favor of a long continued adverse possession and when all the circumstances in proof are consistent with the existence of a conveyance. It will not be indulged against the power to convey or the acts of parties inconsistent with it. The production of the deed from Webb to Allen and Logan was destructive of any presumption of a conveyance by Webb to A. C. & J. K. Allen, or either of them, because he would have no power to make a deed, having previously conveyed the land, and to presume a prior conveyance would be inconsistent with the acts of the parties in the conveyance to Allen and Logan. Also, being dead at the time recited in the deed of Billups Gayle to Jones, Logan could not have executed the deed as there recited. Raguet having no power as administrator to sell the land without the approval of the court it could not be presumed that he did so, and the records of the court being intact, it can not be presumed against the record that the proper orders of court were made. Payment of taxes on land is not equivalent to possession thereof. It has been held to be prima facie evidence of possession when the question is the admission in evidence of ancient instruments and the presumption of a power to convey, but under the facts of this case it is only valuable as evidence of an assertion of title. We are of the opinion, therefore, that the court below did not err in refusing the special instructions requested by the appellant as set out under the twenty-eighth and thirtieth, thirty-first and thirty-second, thirty-fourth, thirty-sixth, thirty-fifth, and twenty-ninth assignments of error, all charges upon the force of presumption, and they need not be more specifically noticed. The court properly submitted the case upon the issue of proof of a conveyance by circumstantial evidence, and the charge correctly states the law. We do not think that it was necessary that it should have been any fuller. To have given the character of instructions requested by the defendant not only would have misstated the issue, but the instructions would have been upon the weight of the evidence.

Special instruction number 4, as shown by the twenty-seventh assignment of error, was a request that the jury be instructed to find for the

defendant if they believed that Henry Webb, prior to his deed to John K. Allen and W. G. Logan, had conveyed the land to A. C. & J. K. Allen. The submission of such an issue on the former trial was held error on the former appeal because there was no evidence to show the date of such a deed. The issue was in no better attitude on the last trial, hence the trial court did right in refusing the instruction.

The twenty-fifth and twenty-sixth assignments are to the effect that the court erred in refusing to submit to the jury the issue of a sale of the land either verbal or by a deed in writing by the administrator of Logan to A. C. & J. K. Allen. It is contended that notwithstanding the fact that Raguet may have had no authority as administrator to sell the land without an order of the court, yet he might have done so, and that if he did so such sale was ratified by the plaintiff and heirs of Logan in the settlement with Raguet as shown in the decree in their suit against him. It is claimed that the settlement between John K. Allen and Raguet as shown by the receipt of July 3, 1838, was evidence of a conveyance of Logan's interest in the Webb land to A. C. & J. K. Allen. There was not a particle of evidence tending to show that the Webb land was included in this settlement even if it should be conceded that such a sale would come within the decree. The inventory of Logan's estate returned in November, 1836, does not include the Webb land, which is evidence that Raguet knew nothing of it; and the account which Raguet settled as shown by the receipt of June 30, 1838, although it contains items for three tracts of land does not mention the Webb land. So there is not a syllable of evidence to show that any claim of A. C. & J. K. Allen to the interest of Logan in the Webb league was settled by the receipt of July 3, 1838. Again, in none of the pleadings nor in the decree in the suit of the plaintiff and Logan's heirs against the administrator is the Webb league mentioned. The confirmation is of all sales made by Henry Raguet as administrator of all lands theretofore belonging to or claimed by the estate. Because it was shown that shortly after that time John K. Allen was in possession of the title papers of the land, it is claimed that it may be inferred that it was embraced in the settlement. It is reasonably certain that John K. Allen had had possession of the papers from the date of the execution of the deed, and from the absence of the land from the inventory it may be inferred that Raguet knew nothing of it more than that it was included in the settlement. The evidence did not authorize the submission of such an issue to the jury.

As held on the former appeal, there was no error in refusing to charge upon stale demand. It has been repeatedly held by our Supreme Court that the claim of the surviving wife in the common property or acquets of the marriage is not obnoxious to such objection. This question is raised by the thirty-third assignment of error. Referring to the nineteenth, twentieth, and twenty-first, and the fourteenth, sixteenth, seventeenth, and twenty-second assignments, we think that the objections sustained by the court in the former appeal to the exhibits "X," "Y,"

and "Z," were obviated by the proof on the last trial of the facts suggested by the court that would make them admissible. The deposition of Randall of such facts was properly received. The objections need not be noticed more particularly.

By the eighteenth assignment of error the exclusion from the evidence of an indorsement in writing on the deed is complained of. On the last page and outside fold of the protocol of Enrique Webb to John K. Allen and W. G. Logan, dated March 8, 1836, for the Webb league, there is written in the Spanish language, as is also the instrument, an indorsement which rendered into English is as follows: "Sale of a league and labor of land in favor of A. C. & J. K. Allen made by Henry Webb on the 8th day of the month of March of 1836." The file number "43" of the protocol appears below the indorsement, indicating perhaps that the indorsement was made before the instrument was filed. At any rate it may have been a mistake of the scrivener and the source of errors to follow. It was held on the former appeal, both on the first decisions and on motion for rehearing specially insisting on error in that respect, that the indorsement was not admissible as evidence, and as above stated we deem the question settled for this appeal.

J. W. Lawrence, who was an attorney at law in 1859 and 1860 at Houston, Texas, testified in the case that Charlotte M. Allen, the widow of A. C. Allen, put in his hands for attention a number of title papers. It was proposed by the defendant to identify and put in evidence a receipt by this witness which included in the description of papers received by him from Mrs. Allen the following: "16. Henry Webb deed to A. C. and J. K. Allen." And to prove by the witness, who had previously stated that he knew nothing about such a deed, that after his memory had been refreshed by the receipt he remembered the deed, and that it was for the Webb league of land. He could not give the date. On objection by the plaintiff and interveners both the receipt and the evidence were excluded. This was in accordance with the decision on the former appeal, and is held not error. We think there was no error in the exclusion from the evidence of the Hodge letter, nor the account with Halsey & Co., as set out under the ninth and first assignments of errror. The defendant is charged by the recital in its deed with notice of the title of appellees and is not an innocent purchaser, and it was not error for the court to refuse to permit the witnesses Crary and Fletcher to testify that it was such. We do not think that the remarks of counsel complained of under the twenty-third assignment of error should require a reversal of the judgment. It was not error to exclude evidence that the appellees had not paid taxes on the land since the institution of their suit. It would not be relevant to any issue in the case. Proof that they had not paid taxes prior to suit was to show that they were not asserting title in support of the claim that a deed had been executed, but when they brought suit a claim was set up and the subsequent failure to pay taxes would not be evidence pertinent to the fact to be proved. Under the second assignment of error it is claimed

that the court erred in excluding an old memorandum of land titles found among A. C. Allen's papers, showing among other deeds the following: "Grantee—Allen, A. C. & J. K.; grantor, Henrique Webb; original grantee, H. Webb; date of instrument, March 8, 1836; quantity conveyed sitio & labor of land; where situated, not stated. Grant by Commissioner Taylor." There was a memorandum at the bottom of it to the effect that the signatures of most of the parties had not been authenticated; and that in addition to the conveyances there were some powers of attorney connected with them, etc. The memorandum was a mere unsigned statement or description of land conveyances without date or authentication. It was also evidently taken from the deed of Webb to Allen and Logan, the name of the grantee having been taken from the indorsement instead of the body of the instrument. There was no error in excluding it.

The judgment of the court below will be affirmed,

*Affirmed.*

### MOTION FOR ADDITIONAL CONCLUSIONS OF FACT.

The appellant has filed a motion for additional conclusions of fact in this case, but it consists entirely of a statement of the evidence received at the trial and of matters that were offered as evidence and rejected by the court. No fact has been pointed out about which there was no finding. The conclusions reached by the court as to some of the facts are objected to, but we see no reason to change any of them. If this court has found any fact that has no support in the evidence and it is material to the decision, the Supreme Court will not hesitate to disregard it. We are of the opinion that we have stated a conclusion upon every fact material to the issues as the jury were warranted by the evidence in finding them, and do not think it would be proper to incumber the record with the evidence detailed in the appellant's motion, even if we felt inclined to do so. The matters offered as evidence and rejected by the trial court may be referred to by the appellant in its application to the Supreme Court for a writ of error as they appear in the bill of exception in the record, and it is not necessary that they should be set out in the court's conclusions of fact. Counsel for appellant have exhibited great ability as well as zeal and industry in the management of this case, and this court has great respect for their contention as to what the conclusions should show, and would not deprive them of a single fact material to the proper presentation of their case to the Supreme Court, yet it is the duty of this court to find facts and not evidence, and we must overrule the motion.

*Overruled.*

Writ of error refused.