BRAZOS OIL & LIGHT COMPANY v. CHARLES W. CRAWFORD, BY NEXT FRIEND.

Decided November 6, 1909.

Personal Injuries—Insufficient Evidence of Proximate Cause.

In a suit for damages for personal injuries alleged to have been caused by the negligence of defendant in failing to furnish plaintiff with sufficient light to enable him to perform his duty of shoveling cotton seed into a conveyor, and in failing to warn plaintiff of a change in the position of the conveyor, evidence considered and held insufficient to show any causal connection between the negligence alleged and plaintiff's injuries.

Appeal from the District Court of Knox County.  Tried below before Hon. Chas. E. Coombes.

*Cunningham & Oliver,* for appellant.—It was the duty of the court to instruct a verdict for the appellant because the undisputed evidence shows that the proximate cause of appellee's injury was his slipping on the cotton seed, which was his own negligence or his assumed risk. Ladonia Cotton Oil Co. v. Shaw, 65 S. W., 693; Gulf, C. & S. F. Ry. v. Benford, 15 S. W., 562; Wills v. Central Ice & Cold Storage Co., 88 S. W., 265.

*H. G. McConnell* and *Gordon B. McGuire,* for appellee.—Whether in any given case the act charged was negligent, and whether the injury suffered was, within the relation of cause and effect, legally attributable to it, are questions for the jury.  Mexican National Ry. Co. v. Musette, 86 Texas, 708; Gonzales v. City of Galveston, 84 Texas, 3; Jones v. George, 61 Texas, 346; St. Louis, A. & T. Ry. v. McKinney, 78 Texas, 298; City of San Antonio v. Porter, 24 Texas Civ. App., 444.

CONNER, CHIEF JUSTICE.—The following statement by appellant of the nature and result of this suit is sufficiently accurate to an understanding of this opinion, and it is therefore adopted, viz.: "The appellee, Charles W. Crawford, a minor nineteen years of age, by his next friend, Archie Crawford, brought this suit in the District Court of Knox County against appellant Brazos Oil and Light Company, for damages for personal injuries sustained by him while working for the appellant in appellant's oil mill operated in Knox County.  The ap-

pellee alleges that at the time of the injuries he was a common laborer in and about appellant's oil mill working in the seed house under the supervision and direction of defendant's foreman; that he worked at night, and shoveled seed into a conveyor which was composed of a trough and a spiral screw working in the trough, which conveyed cotton seed from one seed house to another. He alleges that he was inexperienced in that kind of work; that there was no light in the seed room where he was injured; that a short while before the injuries he had complained to the foreman about the insufficiency of light and that the foreman had agreed to put in good and sufficient lights. He further alleges that when he ·began work the spiral screw extended into the seed room only about eighteen inches; that it entered the room near a hole in the south end of the building which was used for a door. He alleges that on Saturday, the ninth of November, 1907, he did not work during that day or night; that on the ninth of said November appellant put a door in the building where the hole was before, and extended the shaft and metal flanges further into the building, a distance of about twenty-two feet, without appellee's knowledge; that on the night of the tenth of November, 1907, he was directed to go to work in the seed room and shovel seed as he had done before; that he took a lantern and went in the room at the door to begin work; that he hung his lantern on a nail which was partly driven in the wall on the inside over the door, and then undertook to close the door which he had entered, which door opened outside of the building, and in reaching out to pull the door to its place when shut he stepped with his feet upon some loose cotton seed or other substances on the floor, which caused his foot to slide, and caused said minor to fall back against the wooden trough, located as aforesaid, and seeing that he was in danger of falling upon said dangerous shaft and flanges, tried to extricate himself therefrom, but being overbalanced and without sufficient light, was unable to do so, and in stepping with his right foot to where he thought was a place of safety, came with his foot in contact with said shaft and metal flanges at a point a little more than two feet from the place where said shaft and flanges entered said room at the south end as aforesaid, by reason of which his leg was caught and torn and mangled and afterwards amputated. The negligence alleged was a failure to furnish sufficient light to enable appellee to perform his duties in safety, and a failure of appellant to cause said minor to be notified of the lengthening and extending of said trough and metal flanges. Appellee sued for $20,482; the case was tried and resulted in a verdict for appellee for $4,940; a motion for a new trial was properly made and overruled by the court; appellant gave notice of appeal, perfected his appeal, and the case is now before this court."

It is first assigned that the court erred in refusing to give to the jury, as requested, a peremptory instruction to find in appellant's favor. The evidence supports the allegations of appellee's petition as above stated, save that, as we think, it was not shown that appellant's negligence in failing to warn appellee of the extension of the cotton-seed conveyor, or in failing to provide sufficient light as promised, was the proximate cause of the unfortunate result. Appellee alleges that

in the effort to regain his balance, after having slipped on the loose cotton seed, he stepped with his right foot "to where he thought was a place of safety," and thus came in contact with the revolving blades of the conveyor. Had this allegation been supported by the proof, appellant's liability could not be doubted. But appellee, in testifying on this subject, stated on his examination-in-chief that: "When I first stepped in at the door I turned around and hung the lantern on a nail over the door and caught hold of the door and started to pull it to, and the seed rolled under my feet and I fell backwards and throwed my foot back and set it into the conveyor. I struck the conveyor with my foot about a couple of feet from the wall, I suppose; there was a hanger in the conveyor about a foot and a half from the wall, I guess. Prior to that, and on the last time that I was in the seed house before that, the conveyor did not extend back to that hanger. The place that my foot got caught in the conveyor was north of that hanger. I would not have got hurt if the new extension had not been put on the conveyor. I said when I got hurt that I hung the lantern up on the nail and went to pull the door to, and the seed 'kinder' rolled under my feet and I staggered back, and I went to set my right foot back to catch to keep from falling and the conveyor caught my heel." On cross-examination he testified that: "My work in the north seed house was that of shoveling seed into the conveyor. I had worked at that character of work in the south seed house for about two weeks in connection with my step-brother. I learned that it was dangerous to put my foot into the conveyor, but I never thought much about it. . . . I had given notice, as I said, for additional lights; one of the nights that I made this request was on Friday night before, I believe; I made this request of Mr. Collins; I told him that I wanted them to put some lights in there. I would not have gone in there and worked on that occasion without they had promised me to put in lights. On that night I just worked by lantern on the part of the night that I worked in there. At that time there was just about eighteen inches of this iron shaft extending into the building. The box extended on back a good little piece, but there was no auger in it, at least there was none running; if there was any in there it was not running. That little seed house is a room about thirty by forty feet. The house was very well filled up with seed and just left a space at the south end where we stood to throw seed into the conveyor, we had plenty of room in there as far as that was concerned. On the first night that I worked in there I hung the lantern over the hole, there was not any door in there then. . . . When I hung the lantern up over the door I suppose I hung it up about six and a half feet high. The way I hung it I could see the conveyor. . . . On the night that I got injured I went down to the mill and commenced work about seven o'clock and the first hour that I worked was in the south seed house, and about ten o'clock at night my step-brother told me to go and work in the north seed house. When I went to the north seed house I don't remember whether the door was open or not. . . . I knew that there were no lights in the house when I went to work in there, and I went and got the lantern and went to work. . . . On the night that I got hurt I had not worked in the seed

house any at all; I had just walked in and hung the lantern up over the door. I had not turned to pull the door to, I just reached for the door. I hung the lantern up over the door and turned around, facing south. I reached out to get the door and my feet slipped on the cotton seed. I never fell down at all; when the conveyor caught my foot I just 'kinder' set down on the box; I did not fall before I put my foot in the conveyor; I staggered backwards and just set my foot back to keep from falling, and when I got my foot caught I just set down. I was trying to catch and keep from falling, and I stepped and put my foot into the conveyor."

H. V. McElwreath, the night foreman, testified: "Just outside of the door and a little north of it hangs an electric light near the north wall of the seed house and about twenty feet from the south door where the boy was hurt. If the door to this seed room was open the light from this electric light would reflect inside the north seed room. The electric light was directly in line with the west side of the door. That electric light is either ten or fifteen candlepower. The lantern, where I saw it sitting there, was right close to the door and was also right close to the conveyor. The lantern was hung about five feet high. The light from the lantern shone right on the conveyor so it could be seen, and made the conveyor very plain."

There is no other evidence that throws any light on the subject, and that quoted we think merely shows that appellee involuntarily stepped into the conveyor without the thought in mind that in doing so he was stepping into a place of safety. Appellee knew at the time he entered the building that the box in which the conveyor operated extended beyond the point where he stepped, for, in addition to what we have already quoted from the testimony, the brother of appellee, who brought the suit as next friend, testified that: "Prior to the time of the injury the screw part of the conveyor extended into the north seed room about eighteen inches and the box part of it extended six or seven feet. I have been in that seed room a number of times and have seen these conditions." Appellee, as he testified, had worked in the north seed room on prior occasions, and therefore must have known, as is plainly indicated by his own testimony, the location of the box in which the conveyor operated. It is not to be presumed, therefore, that the box, rather than the floor beside it, would have been chosen as a safe place to step had appellee· had time to deliberate. In addition to the testimony of the night foreman, which indicates that the box and conveyor were plainly distinguishable by the light of the lantern and of the electric light near the door, which testimony is uncontradicted, appellee himself testified, as we·have before quoted, that where he hung the lantern he could see the conveyor. Then what is there in the evidence that shows that appellee would not have made the instinctive effort he did to retrieve his position, or would have placed his foot otherwise than as he did had he been warned of the extension of the conveyor, or had the additional lights been furnished as promised? In other words, what casual connection exists between the negligence alleged and the injury? We have been unable to see any, and to so establish was one of the essential elements of appellee's case. (Texas & P. Ry. Co. v. Shoemaker, 98 Texas, 456; Seale v. Gulf, C. & S. F. Ry. Co.,

65 Texas, 274; Ft. Worth & R. G. Ry. Co. v. Neeley, 60 S. W., 282; s. c., 96 Texas, 274; 1 Thompson on Negligence, sections 43 *et seq.*)

No complaint is made because of the presence, character or situation of the cotton seed over which appellee slipped, or that a want of sufficient light in any degree contributed to the fact that his foot did slip over the rolling seed. The rolling seed and the immediate result were evidently among the risks of appellee's employment, for which appellant is not liable. Nor is it alleged that in extending the conveyor appellant was guilty of negligence. The averment goes no farther than that appellant was negligent in failing to warn appellee of the fact of extension. Therefore it may be true, as he testified, that appellee would not have been injured had the conveyor not been extended, but this is not enough under appellee's pleading to fix liability. It should have been made to further appear that the injury would not have happened had light been furnished as promised, or had appellee been warned or notified of the added conveyor. In other words, as before stated, it must affirmatively appear that the particular negligence alleged caused the injury, whereas, as presented in the record before us, it seems undisputed that the concurring causes—those without which appellee would not have been injured—were happenings not made grounds of recovery.

It follows that appellee has failed to show a right of recovery herein, and inasmuch as appellee was afforded full opportunity to testify and fully develop his case, we conclude that the judgment should be reversed and here rendered for appellant, and it will be so ordered, other assignments being disregarded as immaterial in view of our conclusion.

*Reversed and rendered.*