### HALEY et al. v. SABINE VALLEY TIMBER & LUMBER CO. et al.

(Court of Civil Appeals of Texas. Texarkana. June 19, 1912. On Motion for Rehearing, June 29, 1912. On Appellants' Motion for Rehearing, Oct. 17, 1912.)

1. APPEAL AND ERROR (§ 931*) — PRESUMPTIONS IN SUPPORT OF JUDGMENT.

All findings which are not made by the jury to whom special issues were submitted, but which the court was authorized to make, should be assumed to have been made in support of the judgment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3728, 3762–3771; Dec. Dig. § 931.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

2. VENDOR AND PURCHASER (§ 226*)—BONA
FIDE PURCHASER.

A payment by a grantee on land purchased
when he was chargeable with notice that an-
other owned it would not entitle him or his
grantees to claim protection against the claim
of the real owner or her heirs.

[Ed. Note.—For other cases, see Vendor and
Purchaser, Cent. Dig. §§ 475, 476; Dec. Dig. §
226.*]

3. VENDOR AND PURCHASER (§ 242*)—BURDEN
OF PROOF—AFFIRMATIVE DEFENSES.

The burden was on defendant in an action
to recover land to prove that one to whom
the record showed defendants' remote grantor
had theretofore conveyed the land had recon-
veyed it to such grantor, and that defendants
and their grantor were innocent purchasers.

[Ed. Note.—For other cases, see Vendor and
Purchaser, Cent. Dig. §§ 603–605; Dec. Dig.
§ 242.*]

4. VENDOR AND PURCHASER (§ 244*)—BONA
FIDE PURCHASER.

To entitle one to claim in his grantor's
right as an innocent purchaser, the grantee
must show by other testimony than recitals in
the deed to his grantor that such grantor paid
a valuable consideration for the land.

[Ed. Note.—For other cases, see Vendor and
Purchaser, Cent. Dig. §§ 609–611; Dec. Dig.
§ 244.*]

On Motion for Rehearing.

5. ESTOPPEL (§ 26*)—RECITALS IN DEEDS—
PERSONS AFFECTED.

Recitals in recorded deeds cannot affect
an owner of land if they were not a link in his
chain of title, so as to operate as an estoppel
against him.

[Ed. Note.—For other cases, see Estoppel,
Cent. Dig. §§ 61, 62; Dec. Dig. § 26.*]

6. VENDOR AND PURCHASER (§ 244*) — BONA
FIDE PURCHASERS—ACTIONS—SUFFICIENCY
OF EVIDENCE.

In an action to recover land, evidence *held*
to sustain a finding that defendant did not have
notice that the land had been theretofore con-
veyed by the owner when it was conveyed to
one through whom defendant claimed title.

[Ed. Note.—For other cases, see Vendor and
Purchaser, Cent. Dig. §§ 609–611; Dec. Dig.
§ 244.*] .

On Appellants' Motion for Rehearing.

7. VENDOR AND PURCHASER (§ 223*)—EXECU-
TORY CONTRACT—RESERVATION OF VENDOR'S
LIEN.

While, as between the vendor and vendee,
a deed operates only as an executory contract
of sale until the purchase money has been paid,
where the suit is to enforce payment of the
purchase money, the rule applies only to such
cases, and, in an action to recover land upon
the ground that the title was not in defendants'
remote grantor when he conveyed, it cannot be
claimed that because the deed to defendants
contained a covenant of general warranty and
a recital that a vendor's lien was reserved to
secure payment of bonds representing the un-
paid purchase money, and that, it not ap-
pearing that the bonds had not been paid, the
legal title still remained in defendants' grantor.

[Ed. Note.—For other cases, see Vendor and
Purchaser, Cent. Dig. §§ 467, 468; Dec. Dig. §
223.*] .

8. VENDOR AND PURCHASER (§ 235*) — BONA
FIDE PURCHASER — PAYMENT OF PART OF
PRICE.

A grantee who paid part of the purchase
price at the time and delivered its unpaid bonds
for the part unpaid was entitled to claim as an
innocent purchaser as to the whole amount of
the purchase price.

[Ed. Note.—For other cases, see Vendor and
Purchaser, Cent. Dig. §§ 567–569, 571–576;
Dec. Dig. § 235.*]

Appeal from District Court, Shelby Coun-
ty; W. C. Buford, Judge.

Action by A. L. Haley and others against
the Sabine Valley Timber & Lumber Com-
pany and others. From a judgment for de-
fendants, plaintiffs appeal. Affirmed.

By a deed dated September 1, 1851, James
J. Cravens, then the owner of 739 acres of
the Stephen English survey of one league
and one labor in Shelby county, conveyed
same by metes and bounds to Abel Boles.
By deeds dated May 21, 1875, Abel Boles,
joined by his wife, Amy Boles, conveyed 400
acres of the 739 acres to their daughter
Sarah Haley, wife of Morris Haley, 150 acres
thereof to their daughter Elizabeth Lout,
and the remainder thereof to their sons Jos-
eph and William Bolés. The deeds to Sarah
Haley and Elizabeth Lout were filed for rec-
ord December 16, 1910, and November 7,
1888, respectively. The deed to Joseph and
William Boles it appeared, had never been
filed for record. By his deed dated Decem-
ber 24, 1881, said Abel Boles undertook to
convey the 739 acres he had previously, as
stated, conveyed to his children to one B.
F. Van Meter, the consideration for the con-
veyance being, as recited in the deed, $739
paid by Van Meter. In this transaction F.
L. (Dick) Johnston acted for Van Meter. By
his deed dated March 29, 1882, said Van
Meter, in consideration, as recited in the
deed, of $29,330.20 paid to him, conveyed
the 739 acres and other lands to C. P. Hunt-
ington. By a deed dated November 30, 1891,
Elizabeth Lout conveyed the 150 acres con-
veyed to her as stated above by Abel Boles
to said C. P. Huntington. By his deed
dated September 1, 1898, Huntington, in con-
sideration as recited in his deed, of $70,756.-
35 paid to him, conveyed said 739 acres and
other lands to George E. Downs, who by his
deed dated July 1, 1910, conveyed same and
other lands to appellee the Sabine Valley
Timber & Lumber Company, in considera-
tion, as recited in his deed, of the payment
to him of $1 and said lumber company's
certain 453 coupon bonds for $1,000 each.
Payment of the bonds was secured by a
conveyance of the lands to E. B. Parker as
trustee. Abel Boles and his wife died in
1884. Sarah Haley died in April, 1910. Her
husband, Morris Haley, died 18 or 20 years
before she did. This suit was commenced
January 2, 1911, by appellants, the children
and heirs of said Sarah Haley. It was
against appellees the Sabine Valley Timber
& Lumber Company, George E. Downs, E.
B. Parker, W. A. Castleberry, and Willie A.
Castleberry, and was to try the title to the
400 acres, conveyed as stated by Abel Boles
and his wife to Sarah Haley. The Castle-

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

berrys disclaimed and a judgment for costs was rendered in their favor. The other defendants answered, pleading "not guilty," and setting up that Van Meter, Huntington and the lumber company, respectively, had purchased and paid for the land without notice of the deed to Sarah Haley, and therefore, as innocent purchasers, were entitled to protection as against the claim asserted by appellants. The case was submitted to a jury on special issues which, with the answers of the jury thereto, are stated in the record as follows:

"Issue No. 1: Did B. F. Van Meter or F. L. Johnston at the time the deed was made by Abel Boles to B. F. Van Meter dated the 24th day of December, 1881, pay a valuable consideration for said land?"

To this issue the jury answered: "Yes."

"Issue Second: Did F. L. Johnston or B. F. Van Meter, one or both of them, know at the time the deed was made that Abel Boles before that time conveyed the lands in controversy in this case to his daughter Sarah Haley, or were there any facts or circumstances within the knowledge of either of them existing at the time that would cause a reasonably prudent man to believe that before that time Abel Boles had made a deed to the land in controversy to his daughter, Sarah Haley?"

To the second issue the jury answered: "Yes."

"Third Issue: At the time or before the time that Abel Boles made the deed to B. F. Van Meter, of date December 24, 1881, was there an agreement and understanding between the children of Abel Boles, viz., William Boles, Joe Boles, Mrs. Sarah Haley, and Mrs. Elizabeth Lout, that their father, Abel Boles, was to convey the lands to Van Meter, and convert the lands into money, and divide the money among them in the proportion of $400 to Mrs. Haley, $150 to Mrs. Lout, and $200 to Joe and William Boles?"

To issue 3 the jury answered: "Yes."

"Issue Fourth: State by your verdict whether Dick Johnston knew of such family agreement."

To this issue the jury answered: "Yes."

"Issue 5: When did Mrs. Amy Boles die?"

To this issue the jury answered: "1884."

After overruling a motion by appellants to render judgment for them, the court, on the testimony and findings of the jury, rendered a judgment that appellants take nothing by their suit, and in favor of the lumber company, Downs, and Parker, for costs.

Carter & Walker, J. M. Sanders, and Anderson & Davis, all of Center, and Oliver J. Todd, of Beaumont, for appellants. Davis & Davis, of Center, and Jno. T. Garrison, of Houston, and Greer, Nall & Bowers, of Beaumont, for appellees.

WILLSON, C. J. (after stating the facts as above). Appellants insisted in the court below that they were entitled to a judgment on the findings made by the jury, and assign as error the refusal of that court to render a judgment in their favor.

[1, 2] In submitting issues the court assumed that the deed from Abel Boles and his wife to Sarah Haley was delivered to her, and was sufficient as a conveyance to her of the land in controversy. We think the testimony authorized both assumptions, and would not support findings to the contrary. The title to the 400 acres being in Sarah Haley at the time Abel Boles undertook to convey same as a part of the 739 acres tract to Van Meter, and the jury having found (on testimony sufficient, we think, to support their finding) that at that time Van Meter had notice of Sarah Haley's claim, it is apparent that appellants' contention should be sustained, notwithstanding the finding that Van Meter paid Boles for the land, unless the judgment can be upheld on findings not made by the jury, but which the court was authorized to make, and which in support of his judgment it should be assumed he did make. For payment by Van Meter to Boles of the value of the land at a time when he was chargeable with knowledge of the fact that Sarah Haley owned it would not entitle him, nor his grantees in his right, to claim protection as against her claim or that of her heirs.

[3] Appellees insist that effect may be given to the findings of the jury on the issues submitted to them, and the judgment nevertheless be sustained on findings the court was authorized to make, and which it should be assumed he did make, as follows: (1) That Sarah Haley reconveyed the 400 acres to Abel Boles. (2) That Huntington and the lumber company, respectively, were innocent purchasers. The burden of proving the affirmative of these contentions was on appellees.

As we view the record, there was no testimony on which a finding that Sarah Haley had reconveyed the land to Abel Boles could be based. The inferences from the testimony appear to us to be to the contrary of such a conclusion, and to indicate that the parties concerned were of the opinion that, because the deed to her from Abel Boles had not been placed of record, his deed to Van Meter would operate to pass the title to said Van Meter. The agreement which the jury found Sarah Haley and the other children of Abel Boles entered into strongly tended to show that they took that view of the matter. If Sarah Haley believed the effect of her father's deed to Van Meter was to pass her title to him, it would satisfactorily account for the fact that after 1881 she did not pay taxes on the land, nor assert ownership thereof. Lumber Co. v. Gwin, 29 Tex. Civ. App. 1, 67 S. W. 892, 68 S. W. 721.

[4] Aside from the recital in the deed to him from Van Meter, there was no testimony showing or tending to show that Huntington

paid anything for the land. To entitle appellees to claim in Huntington's right as an innocent purchaser, they must have shown by other testimony than the recital in the deed to him that he paid a valuable consideration for the land. That such is the rule has been too long established to be questioned now. Watkins v. Edwards, 23 Tex. 447; Davidson v. Ryle, 103 Tex. 209, 124 S. W. 619, 125 S. W. 881; Bledsoe v. Haney, 139 S. W. 612.

The testimony, we think, was sufficient to show that the lumber company paid to Downs a valuable consideration for the land, and was entitled to protection as an innocent purchaser thereof if it was not chargeable with knowledge of the fact that Abel Boles before he undertook to convey it to Van Meter, whose title it relied on, had conveyed it to Sarah Haley. Whether the lumber company was chargeable with such knowledge or not depended upon the effect which should have been given recitals in the deeds from Abel Boles and his wife to Elizabeth Lout and from Elizabeth Lout to Huntington. In the first mentioned of the two deeds Boles and his wife described the land thereby conveyed as "a part of the headright certificate of Stephen English and the balance of the 750 acres deeded by J. J. Cravens to Abel Boles, to contain 150 acres lying north of a 400-acre tract this day deeded to Sarah Boles, alias Sarah Haley, and south of a 200-acre tract this day deeded to Joseph Boles and Wm. Boles, and we do this day give, grant and convey to the said Elizabeth Lout the 150 acres lying between the two surveys." In the other of the two deeds Elizabeth Lout described the land thereby conveyed as a "part of the headright of Stephen English and laying north of a 400-acre tract deeded to Sarah Boles, now Sarah Haley, and south of a 200-acre tract deeded to Joseph Boles and W. M. Boles, containing 150 acres lying between the two surveys above mentioned. The foregoing land was conveyed to me by my father Abel Boles, and said deed supposed to be lost at the time Abel Boles conveyed the same land to B. F. Van Meter." These two deeds were relied upon by the lumber company as evidence of title in it to a part of the 739-acre tract including the land in controversy. "It is well established," said Chief Justice Roberts in Willis v. Gay, 48 Tex. 469, 26 Am. Rep. 328, "that if a fact is recited in a deed, through which a party claims title to land, he is held to have notice of that fact." And see Peters v. Clements, 46 Tex. 123; Renick v. Dawson, 55 Tex. 109; Caruth v. Grigsby, 57 Tex. 259; Smith v. Estill, 87 Tex. 264, 28 S. W. 804. When the rule is applied to the recitals copied above from the two deeds referred to, it is clear that the lumber company must be held to have had notice of the deed to Sarah Haley; for the recital in the deed to Elizabeth Lout was to the effect that the 150 acres Boles and his wife thereby conveyed to her was the balance of the 750 acres of the Stephen English survey conveyed to Boles by Cravens, lying between 400 acres thereof conveyed by Boles to Sarah Haley and 200 acres thereof conveyed by him to Joseph and William Boles. The lumber company was thus plainly advised that Boles and his wife on May 21, 1875 (the date of their deed to Elizabeth Lout), had conveyed the land in controversy to Sarah Haley. In face of this information so imparted to it, the lumber company would not be heard to say it was ignorant of the fact that Sarah Haley owned the land at the time Abel Boles undertook to convey it to Van Meter and at the time it purchased same of Downs.

On the facts as shown by the record we think no other judgment than one in favor of appellants was authorized. Therefore the judgment rendered by the court below will be reversed, and a judgment will be here rendered in favor of appellants.

### On Motion for Rehearing.

[5, 6] After considering the question further, we think the conclusion reached that the lumber company, because of the recitals in the deed from Abel Boles to Elizabeth Lout and from the latter to Huntington, could not be heard to say it did not have notice of the conveyance from Abel Boles to Sarah Haley was erroneous. It would have been correct had it appeared that the title of the lumber company to the land in controversy depended on either of those deeds. But neither of them was a link in the lumber company's chain of title to that land, and therefore the rule invoked in disposing of the question did not apply. 2 Devlin on Deeds, and authorities cited in note 3, p. 1891. As the recitals in the deeds referred to did not operate as an estoppel against the lumber company, it had a right to show it did not as a matter of fact have notice of the conveyance to Sarah Haley. The question, therefore, simply was one as to the sufficiency of the testimony it relied on to show lack of notice to support the finding involved in the judgment that it did not have notice. We cannot say that testimony was not sufficient to support the finding. The witness Pickering, who was the lumber company's vice president, treasurer, and general manager at the time it purchased the land of Downs, and who acted for it in making the purchase, testified that he nor any one acting for said company did not know of the existence of the conveyance to Sarah Haley, and that he had never heard from any source of the existence of such a conveyance until after the lumber company purchased the land in controversy. This testimony, it seems to us, must be said to have authorized the finding it must be assumed the court made, that the lumber company did not have notice of the conveyance to Sarah Haley. If it did au-

thorize such a finding, then we must treat it as binding on us and establishing the contention made that the lumber company was entitled to protection as an innocent purchaser of the land in controversy. If it was entitled to such protection, then the judgment rendered by the court below was not erroneous, and we erred in setting same aside. Therefore the motion will be granted, and the judgment of the court below will be affirmed.

### On Appellants' Motion for Rehearing.

We adhere to the conclusion reached that appellee was not estopped by the recitals in the deed from Abel Boles to Mrs. Lout and in her deed to Huntington from asserting it was without notice of the fact that Abel Boles before he conveyed the 400 acres in controversy to Van Meter had conveyed same to Mrs. Haley. The deeds from Abel Boles to Mrs. Lout and from her to Huntington did not convey, and did not purport to convey, the land, or any part of it, in controversy here. They conveyed other land. The fact that such other land was included in a 739-acre tract which also included the 400 acres in controversy, and the fact that the entire 739-acre tract was conveyed to appellee's vendor by Huntington, we think are not reasons requiring a conclusion contrary to that reached by us. Appellee was not in the attitude of asserting, and could not assert, title to the land in controversy by virtue of those deeds. As we understand the rule, recitals, when relied on in cases like this one is, operate as an estoppel only when they are contained in instruments constituting the muniments of the title in the party against whom the estoppel is claimed.

[7] The deed from Downs to appellee contained a covenant of general warranty of the title to the land, and a recital that a vendor's lien had been reserved to secure the payment of bonds representing the part unpaid of the purchase money. It not appearing that the bonds had been paid, appellants insist it should be held that the legal title to the land was in Downs and not in appellee, and therefore that appellee was not in a position to claim protection as an innocent purchaser of the land. National Oil & Pipe Line Co. v. Teel, 95 Tex. 586, 68 S. W. 980. The argument is that, until the purchase money has been paid, such a deed operates as an executory, and not as an executed, contract of sale. That this is true, as between the vendor and vendee, when the suit is to enforce payment of the purchase money, is shown by the case appellants cite (Lanier v. Foust, 81 Tex. 186, 16 S. W. 994) and many others of like character decided by the courts of this state; but we have not been able to find an instance where the rule has ever been applied in any other character of cases, and we think it should not be applied in a case like this

one is. Mason v. Bender, 97 S. W. 718; Carey v. Starr, 93 Tex. 508, 56 S. W. 325; Ogburn v. Whitlow, 80 Tex. 239, 15 S. W. 807; Blewitt v. Greene, 57 Tex. Civ. App. 588, 122 S. W. 916; Chase v. Swayne, 88 Tex. 218, 30 S. W. 1051, 53 Am. St. Rep. 742.

[8] The proof being that only a part of the purchase money appellee had agreed to pay for the land had been paid, appellants insist that, if appellee was entitled to claim protection as an innocent purchaser at all, it was entitled to claim such protection only as to the portion it had actually paid of the purchase price. But it appeared that it had executed and delivered its negotiable bonds for the part unpaid of the purchase money. It therefore was entitled to claim as innocent purchaser as to the whole of the purchase price. Cameron v. Romele, 53 Tex. 244; Dodd v. Gaines, 82 Tex. 435, 18 S. W. 618; Le Page v. Slade, 79 Tex. 478, 15 S. W 496; Watkins v. Spoull, 8 Tex. Civ. App. 427, 28 S. W. 358; Taylor v. Callaway, 7 Tex. Civ. App. 461, 27 S. W. 938.

The motion is overruled.